James **PETTAWAY**, Petitioner–
Appellant,

v.

Charles **PLUMMER**, Sheriff of Alameda
County, Respondent–Appellee.

No. 90–15469.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1991.

Decided Aug. 23, 1991.

Renee E. Torres, First District Appellate Project, San Francisco, Cal., for petitioner-appellant.

Joan K. Haller, Deputy Atty. Gen., San Francisco, Cal., for respondent-appellee.

Before BEEZER, NOONAN, and FERNANDEZ, Circuit Judges.

BEEZER, Circuit Judge:

James Pettaway seeks a writ of habeas corpus on the ground that the State of California's attempt to retry him for murder on the theory that he was the actual perpetrator of the murder violates the Double Jeopardy Clause. In a prior state court criminal proceeding, a jury determined that he did not actually perpetuate the murder. The district court denied the petition. We reverse.

I

At Pettaway's first state court trial, it was established that on May 1, 1981, Pettaway, Lowana Walker and Michael Seals were at the house of Karen Taylor. At some point, Walker handed Pettaway a handgun with which he shot Seals in the back of the neck. Seals fainted, but when

he regained consciousness he saw Pettaway and Walker leaving the house through the front door. Taylor was subsequently found dead in the bathroom with two bullet holes in her head. *People v. Pettaway*, 206 Cal.App.3d 1312, 254 Cal.Rptr. 436 (1988).

Pettaway was charged with and convicted of one count of murder and one count of attempted murder. The information included sentencing enhancement charges that, with respect to both the murder and the attempted murder, Pettaway personally used a firearm and personally inflicted great bodily injury.

The prosecution tried the case on the theory that Pettaway personally shot Seals and Taylor. Although the jury initially was not given a jury instruction on aiding and abetting, it requested and received such an instruction during the third day of deliberations.

With respect to the charges of personal use of a firearm and personal infliction of great bodily injury, the jury was instructed that if it found Pettaway guilty on either substantive charge, it had the "duty" to determine whether Pettaway personally shot the relevant victim and that it could do so only if the proof established beyond a reasonable doubt that he had done so. The jury was further instructed that "all twelve jurors must agree to the decision, and to any finding you have been instructed to include in your verdict." At the same time that the jury found Pettaway guilty of both substantive counts, it also found, in a special verdict, that Pettaway did not personally use the handgun or inflict great bodily injury in the commission of the murder of Taylor. The jury was polled and was found unanimously to agree with the verdict.

On appeal, the California Court of Appeal reversed the murder conviction because it found reversible error in the aiding and abetting instruction.

On remand, Pettaway moved to preclude the state from proceeding on the theory that Pettaway personally shot Taylor. Pettaway argued that because the jury had found the sentence enhancements to be untrue with respect to the murder charge, the doctrines of double jeopardy and collateral estoppel barred the prosecution from advancing a theory that Pettaway shot Taylor. The trial court agreed, and because the prosecution said it could not proceed to trial solely on an aiding and abetting theory, the trial judge dismissed the murder count.

The California court of appeals reversed, *Pettaway*, 206 Cal.App.3d at 1315, 254 Cal. Rptr. 436, and the California Supreme Court denied review. Pettaway filed a petition for a writ of habeas corpus in federal district court, claiming that a retrial on the theory that he shot Taylor would violate the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution. The district court denied the petition and Pettaway appeals.

II

We review *de novo* the denial of a petition for writ of habeas corpus. *Carter v. McCarthy*, 806 F.2d 1373, 1375 (9th Cir. 1986), *cert. denied*, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987).

■ The constitutional guarantee against double jeopardy includes the concept of collateral estoppel. *Ashe v. Swenson*, 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970). The basis for Pettaway's petition is that his reprosecution on the theory that he shot Taylor is barred by this element of the Double Jeopardy Clause. To resolve this claim, we must first determine whether the jury's finding that Pettaway did not personally shoot Taylor has collateral estoppel effect. If it does, we must then determine whether the Double Jeopardy Clause bars Pettaway's reprosecution.

■ Collateral estoppel analysis involves a three-step process:

(1) An identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; (2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and (3)

an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

*United States v. Hernandez,* 572 F.2d 218, 220 (9th Cir.1978).

■ The state concedes that the question whether Pettaway fired the gun himself was actually litigated at the first trial. The prosecutor admitted that "at all times [his] theory of prosecution at [the original trial] and even now [at the retrial] would be that [Pettaway] shot and killed Karen Taylor." At argument, the state reiterated that it will not retry Pettaway if it is not permitted to claim that he fired the weapon.

The district court based its denial of Pettaway's petition on the third step of the collateral estoppel analysis, because the court believed the jury could have " 'grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration.' " Specifically, the court found that because California law makes the direct perpetrator of a crime and an aider and abettor equally guilty, *see People v. Beeman,* 35 Cal.3d 547, 554–55, 199 Cal.Rptr. 60, 674 P.2d 1318 (1984), "it is possible that the *verdict,* when considered as a whole, did not rely on the determination that [Pettaway] did not personally kill Ms. Taylor, but was grounded on a determination that [Pettaway] either personally shot Ms. Taylor or aided and abetted in her killing, without deciding between the two alternatives." (Emphasis in original.)

The district court's conclusion assumes that collateral estoppel does not apply unless the issue previously determined was necessary to the question of guilt or innocence. Discussion of the necessity prong of collateral estoppel analysis is usually framed in terms of determinations that were necessary to the "judgment" or the "verdict." *See, e.g., Segal v. American Tel. & Tel. Co.,* 606 F.2d 842, 845 n. 2 (9th Cir.1979) ("[R]elitigation of an issue ... is

not foreclosed if the decision of the issue was not necessary to the judgment reached in the prior litigation."); *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194 (court must determine whether jury could have grounded its "verdict" upon any other issue). However, the fact that the personal use determination at issue in the present case was not formally necessary for a finding of guilt on the murder charge does not prevent the finding from having collateral estoppel effect in this case.

The primary purpose of the rule that prior resolution of an issue will have collateral estoppel effect only if it was necessarily decided is to ensure that the finder of fact in the first case took sufficient care in determining the issue. Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4421, at 193 (1981).[1] The Supreme Court has addressed this concern by focusing on the nature of the original proceedings. In *Burlington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the Court held that where the death penalty phase of a criminal proceeding bears the "hallmarks of a trial on guilt or innocence," *id.* at 439, 101 S.Ct. at 1858, failure of the state to obtain a death sentence indicates that there was insufficient evidence to support that sentence and retrial is barred. We have extended this holding to enhancement factors relevant to non-capital sentences, stating that an essential consideration is "whether the sentencing proceeding at issue resembled a trial on punishment." *Durosko v. Lewis,* 882 F.2d 357, 359 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1930, 109 L.Ed.2d 294 (1990). *Durosko* followed the approach of the Fifth Circuit, which held that where the state was required to prove the enhancement factors beyond a reasonable doubt, failure to do so prevents the state, via the Double Jeopardy Clause, from attempting to prove the same enhancement at a second trial. *Id.* at 359

---

1. The other major concern is that appellate review of a determination may not be available where the issue is not necessary to the determination of the final judgment. Wright, Miller & Cooper, *Federal Practice and Procedure: Juris-* *diction* § 4421, at 193 (1981). In California, the enhancement of a sentence pursuant to a finding of personal use of a firearm may be appealed. *See People v. Harty,* 173 Cal.App.3d 493, 219 Cal.Rptr. 85 (1st Dist.1985).

(citing *Briggs v. Procunier*, 764 F.2d 368, 371 (5th Cir.1985)).[2]

In the present case, although the jury did not have to reach the question of personal use of the handgun if it did not find Pettaway guilty of murder, it was *required* to do so once it found him guilty. California law requires that the enhancement for personal use of a firearm be "pleaded and proven as provided by law." Cal.Pen.Code § 1170.1 (Supp.); *see also People v. Hernandez*, 46 Cal.3d 194, 249 Cal.Rptr. 850, 856, 757 P.2d 1013, 1020 (1988) (the enhancements in the California Penal Code are "part of a determinate sentencing system the inevitable pattern of which is to require additional terms to be imposed only after the enhancement has been found true by the trier of fact"); *People v. Najera*, 8 Cal.3d 504, 509-10, 105 Cal.Rptr. 345, 350, 503 P.2d 1353, 1358 (1972) (Because of the severity of the additional punishment compelled by section 12022.5, the enhancement for personal use of a firearm, a "properly instructed jury" "must make a specific finding on the issue of use."). The jury was instructed that it had the duty to determine whether the state had proven beyond a reasonable doubt that Pettaway fired the handgun.[3] Thus, the issue of use was tried to the jury in a proceeding with all the "hallmarks of a trial on guilt or innocence," and was "necessarily determined" for the purposes of collateral estoppel.

The state also argues that the jury did not necessarily determine that Pettaway did not fire the handgun because that finding could be inconsistent with the guilty verdict.

The Supreme Court has stated that

where truly inconsistent verdicts have been reached, "[t]he most that can be said is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." ... It is equally possible that the jury, convinced of guilt, properly reached its conclusion on [one] offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.

*United States v. Powell*, 469 U.S. 57, 64-65, 105 S.Ct. 471, 476, 83 L.Ed.2d 461 (1984) (quoting *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932)). However, when there is only one *rational* conclusion to be drawn from the first jury's verdict, the Supreme Court has not allowed the possibility that the jury did not base the verdict on proper considerations to negate the collateral estoppel effects of the prior verdict. *See, e.g., Ashe*, 397 U.S. at 444 & n. 9, 90 S.Ct. at 1194-95 & n. 9 (the question is whether a *rational* jury could have based its decision on any other conclusion).

Although in our concept of double jeopardy the law must recognize that a jury can act in an irrational manner—even to the point of ignoring the law or the Judge's instructions in a blend of

---

**2.** Where the original proceedings have all the characteristics of a trial on guilt or innocence, it does not matter whether the fact at issue was originally determined in the guilt/innocence phase, the sentencing phase, or, as here, as an enhancement factor tried during the guilt/innocence phase. *See, e.g., Delap v. Dugger*, 890 F.2d 285, 316 (11th Cir.1989) (acquittal of felony murder in guilt/innocence phase prevents state from seeking death sentence on the ground that the killing occurred during the commission of a felony).

**3.** California law requires that the enhancement be proved beyond a reasonable doubt, and that a unanimous jury determination is required. *See, e.g., People v. Allen*, 165 Cal.App.3d 616, 626, 211 Cal.Rptr. 837 (1985) (proof beyond a reasonable doubt); *People v. Frutos*, 158 Cal.

App.3d 979, 988, 205 Cal.Rptr. 204 (1984) (unanimous verdict). We have no reason to doubt that the jury was so instructed in this case. Certainly, neither party makes any suggestion to the contrary.

That being so, there is no need to grant appellant's motion to augment the record with evidence that was not before the district court, and we decline to do so. *Cf. United States v. Walker*, 601 F.2d 1051, 1054-55 (9th Cir.1979); *see also Kirshner v. Uniden Corp.*, 842 F.2d 1074, 1077 (9th Cir.1988). Those cases clearly apply to most appeals, and may or may not apply to habeas corpus appeals. *See Dickerson v. Alabama*, 667 F.2d 1364, 1366-68 (11th Cir.), *cert. denied*, 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982). However, we need not decide that issue in this case.

undecipherable mercy—we must proceed on the basis that the jury in the first trial acted in a legally correct manner. Otherwise, the ultimate issue of fact decided by any jury could be second guessed and we could never apply the principle of collateral estoppel.

*De La Rosa v. Lynaugh,* 817 F.2d 259, 267–68 (5th Cir.1987). The mere possibility that the jury acted irrationally, without more, will not negate the collateral estoppel effects of a prior verdict if a rational interpretation of the verdict as a whole is possible.

This is not a case in which there is a "truly inconsistent verdict." To the contrary, there is a rational explanation that takes into account the whole of the jury's verdict. The jury was instructed that even if Pettaway did not personally use the weapon, he could be guilty of first degree murder as long as he aided and abetted the murderer. Therefore, the specific finding that he did not personally use a firearm was not inconsistent with the conviction; rather, it was as if the jury had issued a special verdict to that effect regarding the substantive offense.

Pursuant to California law, Pettaway's use of the handgun was pleaded and tried to the jury. The jury necessarily decided that Pettaway did not fire the fatal shots. For these reasons, we hold that this determination has collateral estoppel effect. We must next determine whether that effect may bar the prosecution from proceeding on the theory that Pettaway fired the handgun.

### III

The Fifth Amendment guarantee against double jeopardy embodies the concept of collateral estoppel. *Ashe,* 397 U.S. at 445, 90 S.Ct. at 1195. In applying collateral estoppel as a component of the Double Jeopardy Clause, some courts have distinguished between legal and constitutional collateral estoppel, holding only the latter to implicate a constitutional right. *See, e.g., United States v. Head,* 697 F.2d 1200, 1205 (4th Cir.1982); *United States v. Mock,* 604 F.2d 336, 338–40 (5th Cir.1979). Constitutional collateral estoppel exists where "a fact necessarily determined in the defendant's favor by his earlier acquittal [makes] his conviction on the challenged second trial ... impossible unless the fact could be relitigated and determined adversely to the defendant." *Head,* 697 F.2d at 1205. On the other hand, "double jeopardy guarantees are not engaged by collateral estoppel which, if applied, would merely restrict proof but not make conviction impossible." *Id.*

"[T]he rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th Century pleading book, but with realism and rationality." *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194. Consistent with this admonition, the Supreme Court has clarified that constitutional collateral estoppel depends on the actual circumstances of the second prosecution, rather than on some hypothetical application of the statute in question. For example, even if conduct for which a defendant was previously convicted is only one of several alternative kinds of conduct prohibited by the statute he is now charged with violating, the defendant has a substantial double jeopardy claim if the prosecution concedes that it will need to prove that conduct to convict the defendant. *Illinois v. Vitale,* 447 U.S. 410, 420, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228 (1980).

In *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), the defendant drove his automobile into another car, killing the driver and injuring the passenger. He pleaded guilty to driving while intoxicated and failing to keep right of the median. Two months later, the state brought homicide and criminal assault charges against the defendant for the death and injuries caused in the accident. The bill of particulars filed by the prosecution indicated that the prosecution intended to rely on three acts to prove the charges: (1) driving while intoxicated, (2) failing to keep right of the median, and (3) driving at a speed too fast for the weather and road conditions.

The Supreme Court held that the Double Jeopardy Clause barred the prosecution, stating that

> the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.... The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct. As we have held, the presentation of specific evidence in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding. On the other hand, a State cannot avoid the dictates of the Double Jeopardy Clause merely by altering in successive prosecutions the evidence offered to prove the same conduct.... This holding would not bar a subsequent prosecution on the homicide and assault charges if the bill of particulars revealed that the State would not rely on proving the conduct for which [the defendant] had already been convicted.

110 S.Ct. at 2093, 2094.

■ The present case presents essentially the same situation. When Pettaway moved to prevent the State from proceeding on the theory that he shot Taylor himself, the prosecution admitted that it could not proceed on any other theory, because it could suggest no person Pettaway might have aided and abetted. The state trial court then prohibited the prosecution from proceeding on a theory based on conduct the state had previously failed to prove beyond a reasonable doubt.[4] The trial judge stated that he would not allow the prosecution to present to the jury the theory that "after he shot Michael Seals he then went and shot Karen Taylor."

The state trial court did not prohibit the introduction of evidence tending to show that Pettaway shot Taylor. The court's ruling did, however, make inadmissible evidence offered *only* to prove that Pettaway pulled the trigger. For example, the trial judge stated that he would not allow Lowana Walker to testify that she saw Pettaway shoot Taylor because "it is irrelevant because being offered to prove not that he aided and abetted her or anybody else, but that he actually did the killing."[5] The judge stated that he would allow the prosecution to introduce evidence supporting *both* theories,[6] but explained that he would "instruct the jury that you cannot convict this man on any theory that he personally used the gun." Once this position was made clear, the prosecution admitted that it could present no evidence relevant to an aiding and abetting theory, and the trial judge dismissed the case. In other words, as in *Grady*, the trial court correctly barred reprosecution on a theory the prosecution had tried and failed to prove before.

If the state is allowed to proceed on the theory that Pettaway pulled the trigger himself, it is possible that the second jury would convict Pettaway by reaching a conclusion directly contrary to that reached by the jury in the first trial. This possibility is abhorrent to the principles underlying the Double Jeopardy Clause. *See Dowling v. United States*, 493 U.S. 342, 347–49, 110 S.Ct. 668, 671–72, 107 L.Ed.2d 708 (1990) ("A second prosecution [in *Ashe*] was impermissible because, to have convicted the defendant in the second trial, the second jury had had to have reached a ... conclusion" directly contrary to that of the first jury. (Citing *Ashe*, 397 U.S. at 445, 90 S.Ct. at 1195.). Underlying the Double Jeopardy Clause is the idea, "deeply in-

---

**4.** Although the prior proceedings in *Vitale* and *Grady* resulted in convictions, an acquittal that has collateral estoppel effect has essentially the same double jeopardy ramifications as a conviction. *See North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

**5.** Whether such a ruling would have been correct is not at issue in this appeal.

**6.** The trial court indicated that it would allow the prosecution to present evidence relevant to an aiding and abetting theory, such as ballistic evidence regarding the gun used and the bullets found in Pettaway's possession.

grained in at least the Anglo–American system of jurisprudence,"

"that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity...." *Green v. United States*, 355 U.S. 184, 187 [78 S.Ct. 221, 223, 2 L.Ed.2d 199] (1957). Multiple prosecutions also give the State an opportunity to rehearse its presentation of proof, thus increasing the risk of an erroneous conviction for one or more of the offenses charged. *See, e.g., Tibbs v. Florida*, 457 U.S. 31, 41 [102 S.Ct. 2211, 2217, 72 L.Ed.2d 652] (1982) (noting that the Double Jeopardy Clause "prevents the state from honing its trial strategies and perfecting its evidence through successive attempts at conviction").

*Grady*, 110 S.Ct. at 2091–92.

Allowing the state to reprosecute Pettaway for murder on the theory that he was the actual perpetrator of the murder permits the state to remedy the flaws it perceives as having been fatal to its case the first time, and to attempt to convince a second jury of that which it tried and failed to prove to the first jury. "Having received one fair opportunity to offer whatever proof it could assemble, the State is not entitled to another." *Bullington*, 451 U.S. at 446, 101 S.Ct. at 1862 (quotation omitted).

For these reasons, we hold that it would violate double jeopardy principles if, on retrial of the second offense, the prosecution attempted to prove that Pettaway did personally use the gun. We must, however, emphasize the limits of our holding. What we hold is that when enhancement of the penalties for a substantive offense is presented to the trial jury for its determination beyond a reasonable doubt, and the jury expressly determines the enhancement issue adversely to the prosecution, the prosecution cannot seek to prove the contrary at a second trial of the substantive offense, where it is not clear that there was

simply an inconsistent verdict in the first trial. Of course, the prosecution could still seek to prove Pettaway guilty of first degree murder under an aiding and abetting theory, but, as we have pointed out, the prosecutor expressly eschews any intention to do so. Thus, because this prosecution must be based upon personal use of a firearm or nothing, we are constrained to hold that it cannot proceed at all.

## IV

The district court's order is REVERSED and the cause is REMANDED with instructions to issue the writ of habeas corpus with respect to Pettaway's reprosecution for murder.