UNITED STATES of America,
Plaintiff–Appellant,

v.

John Allen SELEY, Defendant–Appellee.

No. 91–10211.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 13, 1992.

Decided Feb. 25, 1992.

Patty M. Stemler, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Donn S. Alpert, Tucson, Ariz., for defendant-appellee.

Before GOODWIN, FLETCHER and BRUNETTI, Circuit Judges.

FLETCHER, Circuit Judge:

John Allen Seley was indicted on three counts: possession of marijuana with intent to distribute, importation of marijuana, and conspiracy to import marijuana. A jury acquitted Seley on the first two counts, but hung on the conspiracy count. Following trial, the district court ruled that on retrial of the conspiracy charge, evidence relating to the possession and importation charges would be barred by collateral estoppel, and that without such evidence, the charge of conspiracy must be dismissed. The government appeals the suppression order and the dismissal. The government does not contest the dismissal if the suppression order is upheld.

We affirm.

## FACTS

Seley is an American citizen whose principal residence is the town of La Penita in Nayarit province, Mexico. (La Penita lies some 1200 miles south of the border.) While on an extended visit to Lake City, Colorado, Seley met Richard Landry in August of 1990. On October 10, Seley and his wife Lourdes (a Mexican citizen) drove in their van to Mexico, accompanied by Landry and Seley's brother-in-law, traveling in Landry's pickup truck pulling a pop-up camping trailer. The four of them entered Mexico on October 13. The next day, Se-

ley's van was totalled in an auto accident in Hermosillo, Mexico. Because he did not have Mexican insurance, he was imprisoned for 32 days. Landry returned to Colorado during this time, but returned to Mexico with his girlfriend Taria McClelland shortly before Seley's release. The four—Seley, Lourdes, Landry and McClelland—then travelled to La Penita, where they stayed for several weeks. On December 5, Landry drove them to the Nogales, Arizona border crossing in Landry's truck. A search of the trailer disclosed 95 pounds of marijuana packed inside two large propane tanks. (Validity of the search was not disputed.) Seley and Landry were arrested and charged with violations of 21 U.S.C. § 841(a)(1) (possession of marijuana with intent to distribute), 21 U.S.C. § 952(a) (importation of marijuana) and 21 U.S.C. § 963 (conspiracy to import marijuana). Landry entered into a plea bargain and was the chief witness against Seley at trial.

While the preceding facts were not contested, almost everything else was. Landry's testimony, which follows, painted Seley as the ringleader. Shortly after they met in Colorado, Landry told Seley about his money problems arising from a paternity suit. In response, Seley suggested that Landry join Seley's scheme to smuggle marijuana. Hiding the marijuana inside propane tanks was Seley's idea. Landry bought the trailer, and Seley bought the tanks and the necessary welding equipment. When Seley was imprisoned in Mexico, Landry returned to the United States, talked his father into giving him $36,000 for child support payments, and used some of that money to get Seley out of jail. They then travelled to La Penita, bought the marijuana and packed it into the tanks together. When they were caught at the border, Seley tried to talk Landry into taking the rap for both of them.

Seley's testimony differed at every turn. He claimed that in Colorado, Landry asked if he could join Seley's planned trip to Mexico for company. Seley denied buying the propane tanks and welding equipment.[1]

---

1. The prosecution introduced into evidence sales records from the stores where Landry said

Lourdes Seley, not Landry, got the money to free Seley from the Mexican prison. While in La Penita, Landry and McClelland were largely left to their own devices, spending little time with the Seleys. Seley insists that he never knew there was anything in the tanks other than propane, and only found out about the marijuana after Landry sighed, "Busted in Nogales!" as the border agents searched the trailer. The agents confirmed that Seley denied all knowledge of the marijuana at the time of his arrest and afterward.

On March 21, 1991, following a two-day trial, the jury acquitted Seley on the two substantive counts, but could not reach a verdict on the conspiracy count. After discharging the jury, the district court asked that counsel appear the next morning to argue whether Seley could be tried for conspiring to commit an offense the jury had acquitted him of. During that argument, the parties agreed with the court that evidence of the conspiracy as it developed in Colorado would be admissible in a future conspiracy trial. Thinking out loud, the court said:

> [C]ertainly anything pertaining to the entrance of the vehicle or the marijuana into the United States would be barred by collateral estoppel in a future trial. At what point between Colorado and crossing the border, there is a cut off in—in the evidence you would be allowed to produce—I have not shaken it down to that degree of certainty. So that's what is bothering me.

The Court also wondered

> where the Government's going to end. The jury is going to say, "What happened after that?" And we're going to say "Nothing." I mean, I think the Government's got a lousy case.

The U.S. Attorney agreed that if "the Government ends up being unable to bring on the facts of ... the marijuana being in the vehicle—in the container at all—we may have a factual problem that we can't

overcome." Later in the day, the district court issued the following order:

> The Court ha[s] determined that any evidence regarding the purchase, packaging, transportation or importation of marijuana pertaining to or in furtherance of the conspiracy charge in Count 3 herein is inadmissible on the retrial of the conspiracy charge. Having so determined, the Court is of the opinion that no rational jury could conclude the defendant was guilty on the conspiracy count.
>
> Accordingly, this case is dismissed with prejudice, and
>
> IT IS ORDERED that the defendant be released from custody forthwith.

The government now appeals the decision to suppress evidence based on collateral estoppel, and the resulting decision to dismiss the conspiracy charge.

## JURISDICTION

The district court's jurisdiction derived from 18 U.S.C. § 3231 (offenses against the laws of the United States). This court has jurisdiction pursuant to 18 U.S.C. § 3731.

 Section 3731 permits the government to appeal suppression orders so long as the appeal is "not made after the defendant has been put in jeopardy and before the verdict." Jeopardy does not attach in the second trial until the jury is empaneled; there has never been a verdict on the conspiracy charge. Therefore, the suppression order is appealable. *See United States v. Layton*, 720 F.2d 548, 554 (9th Cir.1983) (finding appellate jurisdiction to review suppression order entered before retrial after first trial ended with hung jury), *cert. denied* 465 U.S. 1069, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984).

 Section 3731 precludes us from exercising jurisdiction over a government appeal of a dismissal "where the double jeopardy clause of the United States Constitution prohibits further prosecution." As a general principle, retrials following hung juries do not cause double jeopardy

Seley bought these items; they reflected sales of propane tanks and welding equipment to a "John Seley" on the appropriate dates. How-

ever, neither of the sales clerks remembered the transactions or recognized Seley.

because the failure of the jury to reach a verdict means that jeopardy has not yet terminated. *Richardson v. United States*, 468 U.S. 317, 324–25, 104 S.Ct. 3081, 3085–86, 82 L.Ed.2d 242 (1984); *Layton*, 720 F.2d at 554. Seley makes two arguments that retrial in his case would subject him to double jeopardy. The first requires that we characterize the district court's order as a "judgment of acquittal" under Fed. R.Crim.P. 29(c). This ignores the plain language of the order, which was clearly framed as a dismissal, not an acquittal. The district court had the authority under Rule 29(c) to enter an acquittal, but did not do so.

■ Seley's second argument relies on the Supreme Court's recent elaboration of the double jeopardy clause in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). Defendant Corbin was a drunk driver who swerved across the median at a reckless speed, killing the driver and wounding the passenger of another car. Corbin pled guilty to two misdemeanor traffic offenses. He was later indicted for vehicular homicide and reckless assault. The Supreme Court held that the later prosecution subjected him to double jeopardy. Even though the elements of the offenses were distinct under the "elements test" announced in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)—death was an element of homicide but not of the traffic offenses, and reckless driving was an element of the traffic offenses but not of homicide—the second prosecution was barred because "the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." 110 S.Ct. at 2093. Seley argues that the retrial on conspiracy would require proof of conduct for which he has already been tried, and is therefore barred by *Grady*.

This argument ignores the fact that *Grady* was explicitly concerned with the dangers of successive prosecutions based on the same facts or conduct. *See Grady*, 110 S.Ct. at 2091–2093. The charges against Seley were brought in one indictment. The government does not seek retrial to gain unfair advantage; the need for retrial arose solely from the jury's hanging on one count. *Grady* could not control in this situation without our rejecting the reasoning of *Richardson*, which permits retrials after hung juries because jeopardy has not terminated. By definition, such a retrial is a continuation of a single prosecution, not a successive prosecution. Other circuits have declined to apply *Grady's* principles to prevent retrials following hung juries, even where the defendant was acquitted on related counts at the first trial. *See United States v. White*, 936 F.2d 1326, 1329–30 (D.C.Cir.), *cert. denied* — U.S. ——, 112 S.Ct. 381, 116 L.Ed.2d 332 (1991); *United States v. Farmer*, 923 F.2d 1557, 1562–63 (11th Cir.1991) (declining to apply any form of double jeopardy analysis to retrial following hung jury). The Second Circuit has gone so far as to hold *Grady* inapplicable to retrials of "separate charges within a single prosecution." *Detrich v. United States*, 924 F.2d 479, 480 (2d Cir.1991) (retrial following reversal on appeal does not violate *Grady*). We agree that retrial of a charge following a hung jury does not raise the specter of successive prosecutions that *Grady* sought to eliminate, and therefore hold *Grady* inapplicable to such retrials. Consequently, we may exercise jurisdiction pursuant to 18 U.S.C. § 3731.

## STANDARD OF REVIEW

■ The applicability of collateral estoppel and its relationship to double jeopardy involve issues of law reviewed *de novo*. *United States v. Meza–Soria*, 935 F.2d 166, 167 (9th Cir.1991).

## DISCUSSION [2]

■ Collateral estoppel "means simply that when an issue of ultimate fact has

---

**2.** Seley contends at the outset that the government waived its right to object to the district court's collateral estoppel order. This is not so.

While the government did not cite to the best possible cases for its position at the March 22 hearing (see discussion of *Powell* below), it did

once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). The problem in this and similar cases is how to determine which issues of ultimate fact have been determined by a general verdict of not guilty. The Supreme Court requires that we analyze the case

> with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.

*Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194 (citations omitted). *Accord Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 673, 107 L.Ed.2d 708 (1990), *Pettaway v. Plummer*, 943 F.2d 1041, 1043–44 (9th Cir. 1991). Some examples are in order.

The defendant in *Ashe* was accused of being one of a group of men who robbed six poker players at gunpoint. He was tried and acquitted on a charge of robbing one of the victims. The government then sought to try him again for robbing a different victim. The Supreme Court reviewed the record, and, finding that the first trial turned on the issue of identity, ruled that the acquittal established the ultimate fact that the defendant was not one of the robbers. Collateral estoppel therefore prevented the government from trying him for robbery of another of the players.

In *Pettaway v. Plummer*, the defendant was charged with murder on two theories: either that he fired the fatal shots himself

or that he aided and abetted his co-defendant. The jury convicted him of murder, but found in a sentence enhancement verdict that Pettaway did not use a handgun in the commission of the felony. The conviction was reversed due to error in the aiding and abetting instruction. We held that on retrial, the government was collaterally estopped from presenting evidence suggesting that Pettaway fired the shots himself.

The district court relied in part on *United States v. Corley*, 824 F.2d 931 (11th Cir.1987), which is closely analogous to our facts. The defendant was charged with one count of aiding and abetting embezzlement and one count of conspiracy to defraud a savings and loan. As in the present case, the jury acquitted on the substantive charge and hung on the conspiracy charge. After a meticulous review of the evidence, the Eleventh Circuit concluded that in order to acquit on the aiding and abetting charge, the jury must have concluded that Corley did not commit the two overt acts allegedly committed in furtherance of the conspiracy. *Id.* at 935. Therefore, on retrial of the conspiracy count, it was proper for the district court to exclude evidence of the aiding and abetting charge.

With these cases in mind as analytic models, we must decide which ultimate facts were determined by the jury to enable it to acquit Seley. The jury instructions on Count 1, possession with intent to distribute, required the jury to find two elements: "First, the defendant knowingly possessed marijuana; and, second, he possessed it with the intent to deliver it to another person." The volume of marijuana in the propane tanks was such that any reasonable juror under the instructions would infer intent to deliver. Thus, the acquittal was likely based on the government's failure to prove possession or knowledge. The marijuana was in tanks on the trailer; any of the passengers who knew it was there could have been found to

---

contest the issue at hand: the propriety of retrying Seley on the conspiracy count. Since the hearing was held on less than 24 hours' notice, it would be unduly harsh to require the govern-

ment to have argued collateral estoppel with any more specificity than it did in order to preserve the issue for appeal.

be in possession (defined by the district court as direct physical control or indirect power to control a thing held by another). The acquittal on possession necessarily subsumed the ultimate fact that Seley did not know the tanks contained marijuana.[3]

Count 2, importation, also had two elements: intentionally bringing marijuana across the border, and knowing that the substance in the tanks was a controlled substance. There was no evidence that Seley believed the tanks contained a non-controlled substance. The acquittal must have been based on lack of intent to import, which once again could only mean that Seley did not know that the marijuana was in the tanks.

Since the jury decided as ultimate fact that Seley lacked knowledge of the presence of the marijuana, it must necessarily have found that Seley did not purchase the marijuana in Mexico or help Landry pack it into the tanks. (The possibility that Seley did so but was suddenly stricken with amnesia before reaching the border may be safely rejected as unsupported by the evidence.) This leaves the conspiracy charge. The district court instructed the jury that "to prove that offense, first the government must prove that there was an agreement between June 21st of 1990 and December 5th of 1990 to import approximately 95 pounds of marijuana into the United States from Mexico; and, second, that the defendant joined that conspiracy on or about, or during, that time." The court further explained that the jury must find beyond a reasonable doubt "that there was a joint plan to import marijuana" and that "this defendant joined that conspiracy, did so knowing of the unlawful plan, and intending to help or assist in carrying it out."

The hung jury on this count requires that at least one (but fewer than twelve) of the jurors believed that Seley, while in Colorado, planned to import marijuana, and perhaps purchased the tanks in furtherance of the conspiracy. In addition to this belief,

that same juror or jurors must also have believed that Seley abandoned the plan, because the jury unanimously acquitted Seley of the crimes that required a finding that he had knowledge of the marijuana.

As a result of this *Ashe* analysis, the government may not retry Seley for a crime that would necessitate a finding that Seley had knowledge of the marijuana, or proof of acts that require such knowledge. This is precisely what the district court's March 22 order directs: the government is collaterally estopped from introducing "evidence regarding the purchase, packaging, transportation or importation of marijuana." The government has conceded that it will not pursue the conspiracy charge without this evidence. We therefore affirm the district court's order of dismissal.

The government contends that two Supreme Court cases, *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) and *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), alter the *Ashe* analysis and dictate a contrary result. We disagree.

*Dowling* was a collateral estoppel case. The defendant was tried and acquitted of a burglary during which he allegedly wore a white ski mask and carried a small pistol. At a later trial for bank robbery where Dowling was again accused of wearing a white ski mask and carrying a small pistol, the government introduced evidence of the burglary to show a pattern. The Supreme Court held that this evidence was not barred by collateral estoppel in light of the differing burdens of proof involved. The Court interpreted the acquittal at the burglary trial to mean that the jury was not convinced beyond a reasonable doubt that Dowling was guilty. However, at the bank robbery trial, the evidence of the burglary was introduced under Federal Rule of Evidence 404(b), which allows evidence of prior similar bad acts to show a pattern from

---

**3.** Conceivably, a jury could acquit on the belief that Seley knew Landry had marijuana in the tanks but did not possess it, just as a passenger in a car who knows that the owner keeps a candy bar in the glove compartment would not possess it. However, the jury in this case could not reasonably reach that conclusion because there was no evidence to support it. Seley said he did not know the marijuana was in the tanks at all; Landry said Seley was a co-owner.

which "the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Id.*, 110 S.Ct. at 672 (citation omitted). Because the jury could reasonably conclude that Dowling committed the burglary yet not believe it beyond a reasonable doubt, the Court held that the evidence of the burglary—of which Dowling was acquitted—was admissible at his bank robbery trial. (As an independent ground for its decision, the *Dowling* court also performed an *Ashe* analysis of the burglary trial and determined that the verdict could have rested on ultimate facts other than the identity of the burglar. *Id.* at 673–74.)

■ *Dowling* did not alter *Ashe* so much as it introduced a new perspective on the meaning of the "ultimate fact" decided in the first trial. Instead of meaning that certain acts did not happen, an acquittal means that they were not proved beyond a reasonable doubt. If an act that could have been proved to a lesser degree than that required for conviction is for some reason probative in a subsequent trial, it need not be excluded because of the prior acquittal. Here, the government argues that evidence of Seley's alleged acts in Mexico are probative of his state of mind during the time he was a part of the conspiracy. This ignores the fact that conspiracy, like all crimes, must be proved beyond a reasonable doubt. The first jury found that the alleged Mexican events were not proved beyond a reasonable doubt. The only way they could constitute proof beyond a reasonable doubt of Seley's mental state in Colorado or anywhere else would be for the second jury to reweigh the evidence and decide, directly contrary to the first jury, that the events were proved beyond a reasonable doubt. Allowing the jury to do so denies the first jury's verdict its preclusive effect: Seley's participation in the Mexican events was not proved beyond a reasonable doubt. *Dowling* does not undermine this analysis. *See Dowling*, 110 S.Ct. at 672 (agreeing with *Ashe* that a second prosecution is impermissible where "to have convicted the defendant in the second trial, the second jury had to have reached a directly contrary conclusion").

The government also relies on *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). In *Powell*, a jury acquitted the defendant of conspiracy to possess cocaine with intent to distribute and of possession of cocaine with intent to distribute, yet convicted her of using the telephone in "committing and in causing" the conspiracy and possession. This mixed verdict of acquittals and convictions was logically inconsistent; Powell could not have used the telephone to commit offenses she did not commit. However, a unanimous Court held that the inconsistent verdicts were not grounds to overturn the convictions on the telephone charges. The jury may have acquitted for reasons of lenity or compromise, but this did not invalidate the convictions they did reach.

The government urges us to rely on *Powell* to find a logical inconsistency in the Seley verdicts. There is none. The jury acquitted on possession and importation; they reached no verdict on conspiracy. This is not the logically inconsistent mixed verdict of acquittals and convictions to which *Powell* applies. Even if we were to accept the government's invitation to apply the "rationale of *Powell*," we would not arrive at the government's result. If we approached every acquittal suspecting that the jury may have nullified, acquittals could never be said to settle questions of ultimate fact, and *Ashe* would mean nothing at all. "The mere possibility that the jury acted irrationally, without more, will not negate the collateral estoppel effects of a prior verdict if a rational interpretation of the verdict as a whole is possible." *Pettaway*, 943 F.2d at 1046.

### CONCLUSION

For the reasons set forth above, the district court is AFFIRMED.