UNITED STATES of America, Plaintiff,

v.

Naron Keith CELESTINE, a/k/a Keith Madden, a/k/a "Cold," Defendant.

No. A94–146 CR (JKS).

United States District Court,
D. Alaska.

Aug. 9, 1995.

Mark A. Rosenbaum, Asst. U.S. Atty., Anchorage, AK, for U.S.

Allen N. Dayan, Dayan & Wensel, P.C., Anchorage, AK, for Celestine.

Sidney K. Billingslea, Anchorage, AK, for McBeth.

## ORDER IN LIMINE FEDERAL RULE OF EVIDENCE § 403

SINGLETON, District Judge.

Naron Keith Celestine ("Celestine") was charged in a five-count indictment with drug related offenses. Docket No. 48 (First Superseding Indictment). Counts 1 and 2 of that indictment are relevant to this Order. In Count 1, Celestine was charged with maintaining a specific place—381 Bolin Street, No. 4—at a specific time—on or about December 9, 1994—for drug trafficking in violation of 21 U.S.C. § 856. In Count 2, Celestine was charged with possession of cocaine at the same time and place with the intent to distribute in violation of 21 U.S.C. § 841(a). *Id.* The case was tried to a jury. The government relied upon essentially the same evidence to prove Count 1 as it did to prove Count 2. Celestine, a federal probationer, informed his probation officers that 381 Bolin Street was his address. Celestine's probation officers subsequently conducted a search of the premises when Celestine was not present. During the search, Celestine's probation officers discovered commercial quantities of cocaine, Celestine's thumbprint on a scale customarily used to weigh cocaine, Celestine's clothes in a bureau and closet, and Celestine's fingerprint on a money roll containing a significant amount of cash.

Latrice McBeth ("McBeth"), a co-defendant, testified on Celestine's behalf. She testified that 381 Bolin street was her apartment for which she paid the rent and all utilities. Celestine occasionally stayed with her and kept his clothes in her apartment but contributed nothing to its upkeep. McBeth further testified that she was keeping the drugs without Celestine's participation for a man named Brown. She denied that Celestine had any knowledge of the drugs on the premises, noting that Celestine had moved the scale from one room to another, which accounted for his fingerprint. Other witnesses accounted for the large quantity of money found in the apartment with Celestine's fingerprints on it by indicating that Celestine was a dishonest gambler who supported himself by cheating at dice. One woman testified that she was Celestine's shill, or confederate, in his gambling and regularly saw him with large amounts of cash. Other evidence indicated that the car Celestine was driving at the time of a confrontation with law enforcement officers was

registered to a third woman who occasionally stayed at 381 Bolin street and listed that address on the vehicle registration.

The government's theory of the case was that McBeth was Celestine's agent, or at the very least his partner, and that through her he "maintained" the apartment for the purpose of possessing and distributing the cocaine found in the search. Moreover, the government maintained that Celestine used the scale found in the search in that endeavor. Given the large quantity of cocaine, the government argued, it was unreasonable to infer that the cocaine could have been for personal use.

The elements that the government had to prove to sustain its burden on Count 1 appear in Instruction No. 3:

First, the defendant knowingly opened or maintained 381 Bolin Street, # 4, Anchorage, Alaska.

Second, the defendant knowingly opened or maintained 381 Bolin Street, # 4, Anchorage, Alaska, for the purpose of manufacturing, distributing, or using cocaine.

Docket No. 117. The jury was also instructed that Celestine needed to exercise some degree of control over the premises to maintain it. *Id.*

The elements the government had to prove to sustain its burden with regard to Count 2 were set out in Instruction No. 5:

First, the defendant knowingly possessed cocaine; and

Second, the defendant possessed it with the intent to deliver it to another person.

Docket No. 117.

The jury acquitted Celestine of possession of cocaine with intent to distribute (Count 2) but were unable to agree on the charge of maintaining (Count 1). The case was reset for trial and the government candidly conceded that it hopes to reintroduce the same evidence regarding the cocaine and paraphernalia, in order to prove maintaining, that it sought unsuccessfully to use to prove possession with intent to distribute, i.e., the government will seek to show Celestine's dominion and control over the cocaine and paraphernalia in order to persuade the jury to find dominion and control over the apart-

ment. Celestine moves for judgment of acquittal on the maintaining charge and, in the alternative, seeks an order *in limine* precluding the government from relying on the evidence of his cocaine possession for distribution, a charge for which he was acquitted, in order to prove maintenance and control over the apartment for the purpose of cocaine distribution. *See* Docket No. 121. The Court denies the motion for judgment of acquittal but grants the motion *in limine*.

## DISCUSSION

 The double jeopardy clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST., amend. V. The protection applies to both successive prosecutions and successive punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In determining whether successive prosecutions involve the same offense, the Supreme Court applies a same elements test, derived from *Blockburger v. United States*, which inquires whether each offense contains an element not contained in the other. 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Applied literally, possessing cocaine for the purpose of distribution and maintaining an apartment for the purpose of distributing cocaine appear distinct since it would certainly be possible to maintain an apartment for the purpose of distributing cocaine other than that which was found on the premises during one search. Nevertheless, prosecution for maintaining the apartment for the purpose of distributing cocaine after a jury acquitted him of possessing the cocaine and paraphernalia found in the apartment appears to violate Supreme Court decisions when the government bases its maintaining prosecution on cocaine and paraphernalia which an earlier jury specifically determined was not possessed by Celestine. *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) interpreting *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) and *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *but see United States v. Dixon*, —— U.S. ——, ———— ——, 113 S.Ct. 2849, 2861–

62, 125 L.Ed.2d 556 (1993), overruling *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), and thus casting doubt on this use of *Vitale*.

The government argued at the first trial that Celestine was maintaining the Bolin Street apartment for the purpose of distributing the cocaine and paraphernalia found by Celestine's probation officers. Possession of the specific cocaine and paraphernalia found on the premises was a "species" of the lesser included offense of maintaining. Nevertheless, given *Dixon*, the Court cannot find, as it otherwise would, that in the specific context of this case possession with intent to distribute was a species of lesser included offense of maintaining the residence for the purpose of distributing cocaine.[1] In light of *Dixon*, the Court cannot find that the acquittal of Celestine on the charge of possession for distribution automatically forces an acquittal of the charge of maintaining. By the same token, the United States Supreme Court opinion in *United States v. Powell* precludes a consider-

ation of the consistency or inconsistency of the verdicts. 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). In addition, a reasonable extension of *Powell* precludes the Court, for purposes of evaluating the evidence on the motion for judgment of acquittal, from simply subtracting all evidence that was also relevant to the charge for which Celestine was acquitted. Finally, a criminal defendant is not allowed to make a motion for summary judgment in order to test the sufficiency of the government's evidence pre-trial. *See, e.g., United States v. Knox*, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969).

In summary, there was sufficient evidence to go to the jury on the issue of maintaining 381 Bolin Street, No. 4 to permit the jury to convict Celestine of that offense so that a judgment of acquittal was properly denied and the issue submitted to the jury. The jury's inability to decide that offense does not preclude retrial. *Richardson v. United States*, 468 U.S. 317, 324–25, 104 S.Ct. 3081,

---

1. In *Vitale* the Court dealt with a similar situation. A juvenile struck and killed two children while recklessly driving his vehicle. *Vitale*, 447 U.S. 410, 100 S.Ct. 2260. The juvenile was initially charged and convicted of the misdemeanor offense of failing to reduce his speed, and later with traffic manslaughter. The highest court of the state applied an evidence-conduct gloss to the double jeopardy protection and precluded the manslaughter prosecution. On *certiorari* to the United States Supreme Court, the case was remanded, the majority assumed, *arguendo*, that if the government relied upon evidence of failing to stop timely as a predicate for finding recklessness, perhaps under a violation of ordinance rationale, then a serious double jeopardy question would arise. However, the Court determined that it was possible to foresee a manslaughter prosecution that would not rely upon failing to stop since it appears that the juvenile violated virtually every known traffic ordinance in his race to the accident. The dissenters concluded that the "serious question" could only be answered in the affirmative, i.e., double jeopardy would be violated. *Id.* at 423, 100 S.Ct. at 2268 (Stevens dissenting). Later, in *Grady*, the Court adopted the view of the *Vitale* dissent. *Grady*, 495 U.S. 508, 110 S.Ct. 2084 (1990). *See* extended discussion in *Dixon*, ── U.S. at ──────, 113 S.Ct. at 2860–62. It is possible to read *Dixon* as disapproving the dictum in *Vitale* and thereby significantly limiting the holdings of *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) and *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). Justice Scalia dismisses these latter two cases as representative of a rare situation, a felony for which felony murder is the best illustration, that can be committed through various means, i.e.: (1) homicide + rape; (2) homicide + arson; or (3) homicide + robbery, in which case it is possible to treat rape as a species of lesser included offense of (1) but not of (2) and (3). "The crime generally described as felony murder is not a separate offense distinct from its various elements." *Id.* ── U.S. at ──, 113 S.Ct. at 2857 (citation omitted). Thus, if a defendant was charged, but acquitted, of rape, under Justice Scalia's reading of *Harris–Brown*, he could not thereafter be charged and convicted of (1). But, if the facts warranted, he could perhaps be charged and convicted of (2) or (3) even though the homicide, the rape, the robbery and the arson were part of the same transaction. This would follow from the fact, I assume, that in instructing the jury regarding felony murder it would be necessary to specify the felony which with a homicide adds up to felony murder. *See, e.g.*, 2 Devitt, Blackmar and O'Malley, Federal Jury Practice and Instructions (1990) (instruction § 38B.18 supplement 1994)). The Court initially thought that this case might satisfy even Justice Scalia's reading of *Brown–Harris*. On reflection however, the Court agrees with the government that the interplay between maintaining and possessing for distribution is more analogous to that between conspiracy to possess and possession, *United States v. Felix*, since it is certainly possible to acquire a place and maintain it for the purpose of distributing cocaine before you actually acquire any cocaine to distribute. *See Felix*, 503 U.S. 378, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992).

3085–86, 82 L.Ed.2d 242 (1984). Since possession with intent to distribute is not a lesser included offense of maintaining even under the facts of this case, Celestine's acquittal of the former does not bar his retrial on the latter. *Dixon,* —— U.S. at —— ——, 113 S.Ct. at 2863–64. Therefore, the renewed motion for judgment of acquittal must be denied.

■ Although the Court denies the renewed motion for acquittal, it is convinced that it must grant Celestine's motion *in limine* to preclude the use by the government at the second trial of the evidence of cocaine and paraphernalia found in the search of the premises and which formed the basis for the charge for which Celestine was acquitted. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (holding that the double jeopardy clause encompasses the doctrine of collateral estoppel and precludes the government from relitigating "issues" previously decided against it). In so doing, the Court recognizes that the issue is better described as direct estoppel than collateral estoppel. *United States v. Bailin,* 977 F.2d 270, 276–77 (7th Cir.1992). It is unquestionable that Celestine's possession for distribution of the cocaine and paraphernalia found at 381 Bolin Street was litigated and necessarily decided in the first trial. To ask a second jury to consider the same evidence in order to determine that Celestine was maintaining the apartment for purposes of cocaine distribution involves re-litigation of that very issue and is precluded. *See, e.g., United States v. McLaurin,* 57 F.3d. 823 (9th Cir.1995); *United States v. Seley,* 957 F.2d 717 (9th Cir. 1992).

In *Dowling v. United States* the Supreme Court held that for purposes of collateral estoppel it was important to distinguish between legal guilt and factual guilt. 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). An acquittal only determines that the defendant was not legally guilty; it does not address the question of whether he was factually guilty, i.e., whether he engaged in the conduct upon which the government earlier relied to show legal guilt. The Court therefore concluded if that conduct was relevant in a later proceeding pursuant to FED.R.EVID.

404 it could be proved because the burden on the government to present evidence under Rule 404 was less than its burden to show guilt beyond reasonable doubt. *Id.* at 349, 110 S.Ct. at 672 *citing Huddleston v. United States,* 485 U.S. 681, 689–90, 108 S.Ct. 1496, 1500–01, 99 L.Ed.2d 771 (1988) (trial court need not make a preliminary finding that the government has proved that the defendant was guilty of the "other crime" by preponderance of the evidence before admitting the "other crime" for relevant purposes under FED.R.EVID. 404; tender is sufficient if the jury could reasonably conclude that the act occurred and that the defendant was the actor); *see also Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (dealing with preliminary fact findings under Rule 104(c)).

*Dowling* is not inconsistent with the decision in this case for a number of reasons. First, unlike in *Dowling,* the jury in Celestine's first trial did necessarily determine the issue which is important here, that Celestine was not in possession of the cocaine found at 381 Bolin Street No. 4 for purposes of its distribution. Given the quantity of cocaine, it would not have been reasonable for the jury to find possession for personal use and acquitted on that basis. *See* discussion in *Dowling,* 493 U.S. at 350–52, 110 S.Ct. at 672–73; *Seley,* 957 F.2d at 721–22. Thus, the first jury found that Celestine did not have dominion and control over that cocaine and paraphernalia. Second, the government's burden of proof for proving possession of cocaine in commercial quantities for purposes of distribution is identical to the burden of proof for proving maintenance of the place where the cocaine was possessed for purposes of distribution. In order for the government to use Celestine's possession of the cocaine found on the premises to prove he was maintaining those very premises for distributing cocaine, the jury would be required to be convinced beyond reasonable doubt that he in fact possessed that cocaine for that purpose; mere suspicion would be insufficient. *Compare Dowling,* 493 U.S. at 348–50, 110 S.Ct. at 671–72 *with United*

*States v. Seley,* 957 F.2d at 723.[2] Thus, it would appear that possession for distribution of the cocaine in question would be an "ultimate issue" in the second prosecution because in order for the maintenance to be criminal it must be for the purpose of distributing cocaine. *See Bailin,* 977 F.2d at 280. Consequently, a proper application of FED. R.EVID. 403 to this case requires exclusion of evidence regarding the cocaine and paraphernalia found in the search of 381 Bolin Street, No. 4, at Celestine's retrial for maintaining those premises for cocaine distribution. Prejudice must be weighed against probative value. Here, the prejudice is that the second jury would conclude that Celestine possessed that cocaine for purposes of distribution in direct conflict with the earlier jury's verdict. The probative value of the evidence to show knowledge of cocaine fails the necessity test since those factors could be shown by other evidence.

Even if *Seley* does not survive *Dixon,* the Court would still reach the same conclusion. *Dowling, Dixon* and *Huddleston* all recognize the trial court's continuing discretion to exclude "relevant" evidence where necessary

---

**2.** At first blush it may appear that the *Seley* court is not paying sufficient attention to *Dowling* and *Huddleston* since read together the Supreme Court seems to say that the proponent of evidence never has a burden beyond showing its relevance so that *Ashe* never implicates the introduction of evidence. *Compare Huddleston,* 485 U.S. at 691, 108 S.Ct. at 1502 ("individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than *its* constituent parts," citing *Bourjaily v. United States,* 483 U.S. 171, 179–80, 107 S.Ct. 2775, 2780–81, 97 L.Ed.2d 144 (1987)) *with Dowling,* 493 U.S. at 348–49, 110 S.Ct. at 671–72 ("unlike the situation in *Ashe v. Swenson,* the prior acquittal [in *Dowling*] did not determine an ultimate issue in the present case"). The Court understands that it is no longer possible to rely upon *Pettaway v. Plummer,* 943 F.2d 1041, 1046–48 (9th Cir.1991), because that case relies heavily upon *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which has been overruled, and *Vitale,* which has been disapproved. *See Dixon,* —— U.S. at ——, 113 S.Ct. at 2859–64. Reading *Dowling, Dixon,* and *Huddleston* together it would be possible to conclude that a prior acquittal is irrelevant in a subsequent prosecution under *Ashe* unless the two offenses have a common necessary element which was decided in the prior prosecution. Under this theory, elements and issues would be synonymous and *Ashe* would only involve issue preclusion and not fact preclusion. While the government's theory of the case was that Celestine was possessing the cocaine found on the premises for purposes of distribution and that his *possession of that cocaine* established that he was maintaining the residence for the purpose of distributing cocaine, it is not possible to make the possession of specific cocaine a common element because as we have seen, maintaining a residence for purposes of distribution can precede in time the acquisition of the cocaine to be distributed. This view conflates issue preclusion with the double jeopardy protection. Evidence would never be precluded unless the prosecution was precluded. While this is a possible reading of the cases, it is not the only permissible reading. *See, e.g., Bailin,* 977 F.2d at 277 (while multiple trials of technically distinct but factually overlapping counts would not offend double jeopardy, it does offend issue preclusion).

In *Seley,* the court did say, in apparent conflict with *Dowling, Dixon* and *Huddleston* that:

Here, the government argues that evidence of Seley's alleged acts in Mexico are probative of his state of mind during the time he was part of the conspiracy. This ignores the fact that conspiracy, like all crimes, must be proved beyond a reasonable doubt. The first jury found that the alleged Mexican events were not proved beyond reasonable doubt. The only way they could constitute proof beyond reasonable doubt of Seley's mental state in Colorado or anywhere else would be for the second jury to reweigh the evidence, and decide, directly contrary to the first jury, that the events were proved beyond a reasonable doubt.

*Id.* 957 F.2d at 723.

This argument presupposes that each item of evidence to be considered by the jury must be tested by the beyond reasonable doubt standard and of course *Huddleston* read together with *Dowling* rejects that assumption. It is, however, possible to salvage *Seley* by giving *Dowling* and *Huddleston* a narrower reading. In both cases the court was concerned with true "other crimes" evidence in which the charged offense and the "other crime" were completely independent. In *Seley* and in this case, the "other" crime and the current crime are part of the same transaction and the government would be using the evidence of cocaine found on the premises to prove Celestine's possession of it for distribution as a predicate for finding that Celestine maintained the premises where the cocaine was possessed for its distribution. To accept that argument, the second jury would have to directly reject the conclusion of the first jury. The tension between double jeopardy in the typical Rule 404 context, as was the case in *Dowling,* is much less than where the acquittal involves the very transaction in which a subsequent conviction is sought. In such a situation a finding that an issue decided in the first trial is ultimate in the second trial should not require a finding that it was an element in both.

to serve other proper purposes. FED.R.EVID. 403. A reasoned exercise of that discretion is particularly necessary in cases in tension with a defendant's Fifth Amendment right not to be put twice to the burden of defending a single case. *See, e.g., Dowling,* 493 U.S. at 352–54, 110 S.Ct. at 674–75 (suggesting that, because the jury is convinced that the defendant committed the other crime, the potential prejudice that the jury will convict the defendant of the present crime despite doubts, and the unfairness of forcing the defendant to spend time and money re-litigating matters considered at the first trial, should be dealt with under FED.R.EVID. 403 and not through a constitutional ruling). Despite the first jury's decision, the government had a much stronger case that Celestine possessed the cocaine present on the premises as a principal, partner or aider and abettor in its distribution than its case that he maintained those premises. In fact, at the first trial, its argument regarding the latter depended on its argument regarding the former. Under such circumstances, a proper application of FED.R.EVID. 403 compels a finding that the potential prejudice from use of that evidence outweighs any probative value it might have for the other purposes articulated by the government. *Cf. United States v. One 1978 Piper Cherokee Aircraft,* 37 F.3d 489, 495 n. 10 (9th Cir.1994) (suggesting that multiple prosecutions on the same evidence may be fundamentally unfair even if not violative of double jeopardy).

**IT IS THEREFORE ORDERED:**

The motion for judgment of acquittal on Count 1 is **DENIED.** The motion *in limine* to preclude use of the evidence of the cocaine and paraphernalia found during the search of 381 Bolin Street, No. 4, at the second trial of Count 1 is **GRANTED.**