**Gregory Paul WILSON, Petitioner,**

**v.**

**Stan CZERNIAK, Superintendent, Oregon State Penitentiary, Respondent.**

**Civil No. 02–40–AS.**

United States District Court, D. Oregon.

Nov. 21, 2002.

Dennis N. Balske, Office of the Federal Public Defender, Portland, OR, Richard L. Wolf, Portland, OR, for Petitioner.

Lynn David Larsen, Oregon Department of Justice, Salem, OR, Michael D. Reynolds, Solicitor General, Salem, OR, Robert J. Leineweber, Multnomah County District Attorney's Office Portland, OR, for Respondent.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

Petitioner brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to prevent the State of Oregon from trying him a third time on three charges of aggravated felony murder. In his Findings and Recommendation, Magistrate Judge Ashmanskas granted the habeas corpus petition. For the reasons set forth below, I decline to adopt the Findings and Recommendation, and dismiss the habeas corpus petition.

## BACKGROUND

I take the factual background of this case from the petitioner's appeal, *State v. Wilson,* 323 Or. 498, 500, 918 P.2d 826 (1996), which in turn took the facts of the case from the co-defendant's case, *State v. Charboneau,* 323 Or. 38, 40–41, 913 P.2d 308, 310–11:

> We view the evidence adduced at trial in the light most favorable to the state, because the jury found defendant guilty. *See State v. Tucker,* 315 Or. 321, 325, 845 P.2d 904 (1993) (stating principle). The victim, Misty Largo, was a homeless teenager who had been living in Portland for 6 to 12 months at the time of her death. On July 25, 1992, defendant, along with Greg Wilson and two other men, drove to an area under the Marquam Bridge where Largo then was living. Defendant and Wilson were concerned that Largo was spreading rumors about Wilson's having stabbed someone.
>
> The group found Largo and escorted her back to their vehicle at knifepoint. They drove to defendant's house. Defendant took Largo into the house, also at knifepoint. Many people were there. Largo was taken into a back room. Wilson instructed several of the people present to hit Largo in the face, and they did. Largo was kept in the back room, where she was repeatedly interrogated and slapped.
>
> The next day, defendant and Wilson left the house and told others in the house to make sure that Largo did not leave. When defendant and Wilson returned later that day, Largo was interrogated and slapped for several hours. Then she was taken again to the back room. At some point that evening, Wilson, in

defendant's presence, decided that he would kill Largo.

Largo was tied to a wheelchair. Wilson and defendant first tried to kill Largo by poisoning her with a glass of water in which they had dissolved a nitroglycerin pill. When that act failed to kill Largo, defendant found a plastic bag and placed it over Largo's head. After about five minutes, Largo was still breathing. Defendant then located a piece of speaker wire and wrapped it around Largo's neck. Defendant and Wilson took turns choking Largo with the speaker wire for five to ten minutes. Still not convinced that Largo was dead, Wilson hit Largo on the sternum and throat. She 'gurgled and choked and stopped breathing.' After Largo died, defendant said that he would dispose of her body. Defendant and Michael Leon Stanton, another man at defendant's house, left with the body. Defendant later said that he had hit Largo twice in the head with a splitting maul and that he and Stanto had stabbed her in the heart.

Petitioner was tried before a jury in 1993 in Multnomah County Circuit Court on a 15–count indictment. Counts 1, 2, and 3 charged aggravated felony murder, alleging that petitioner personally and intentionally killed Misty Michelle Largo while in the course of kidnaping her. Count 4 charged aggravated murder in the course of intentional torture. Counts 5, 6, and 7 charged aggravated murder to conceal the commission of the three kidnaping counts. Count 8 charged aggravated murder for the purpose of concealing the commission of the co-defendant's sodomy of Ms. Largo. Count 9 charged aggravated murder to conceal the commission of assault in the third degree. Count 10 charged intentional murder. Counts 11, 12, and 13 charged three kidnaping theories (second degree kidnap, first degree kidnap for the purpose of terrorizing, and first degree kidnap for the purpose of

causing physical injury). Count 14 charged assault in the third degree, and Count 15 charged aiding and abetting the abuse of a corpse.

Petitioner was convicted on all 15 counts, and judgments of death were entered on all nine aggravated murder counts. The intentional murder charge in count 10 merged with the aggravated felony murder count charged in count 1, as requested by the State in its sentencing memorandum. The judgments and sentences of death were automatically directly reviewed by the Oregon Supreme Court, which reversed and remanded for retrial on the nine aggravated murder counts and the one intentional murder count. The remaining convictions and sentences were affirmed. *See State v. Wilson,* 323 Or. 498, 918 P.2d 826 (1996).

Petitioner was tried before a jury a second time on the aggravated murder and intentional murder charges. The aggravated murder charge in Count 8, based upon concealing the commission of sodomy, was dismissed before trial as petitioner's codefendant had been acquitted of the charge of sodomy. To prevent a "gap" in the number of counts the jury would consider, the trial court re-numbered the intentional murder count from count 10 to count 9, and the aggravated murder count that was originally count 9 was re-numbered to count 8. The remaining counts of aggravated murder (1–7) were numbered the same in the retrial as they were in the original trial.

The second jury returned verdicts of not guilty on the charged offenses in counts 4 through 9, convicting petitioner instead of the lesser included offenses of attempted aggravated murder (counts 4 through 8) and attempted murder (count 9). The jury was unable to reach a verdict on counts 1, 2, and 3 (aggravated felony murder in the course of the three kidnaping theories).

The jurors had been instructed by the trial court that they must "acquit first" on the charged offenses before considering any lesser included offenses.

The State of Oregon now seeks to retry petitioner on the three aggravated felony murder counts on which the second jury was unable to reach a verdict. Petitioner filed a motion in the state trial court to bar his retrial on Fifth Amendment double jeopardy grounds. The motion was denied. Petitioner then sought a Writ of Mandamus from the Oregon Supreme Court on the same grounds, which was denied without opinion.

Petitioner filed this action on January 9, 2002. In his petition, he alleges that the second jury's verdict of not guilty on the charge of intentional murder bars a retrial on the charges of aggravated felony murder.[1]

### JURISDICTION

Petitioner exhausted his state remedies on his double jeopardy claim by moving to bar a retrial and by seeking a Writ of Mandamus from the Oregon Supreme Court. Accordingly, this court has jurisdiction to consider the petition for writ of habeas corpus under 28 U.S.C. § 2254. *Mannes v. Gillespie,* 967 F.2d 1310, 1312 (9th Cir.1992) (citing *Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 300–03, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984)).

### LEGAL STANDARDS

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court acts "contrary to ... clearly established Federal law" if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Ramdass v. Angelone,* 530 U.S. 156, 165–66, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000); *Van Tran v. Lindsey,* 212 F.3d 1143, 1150 (9th Cir. 2000).

An "unreasonable application of clearly established Federal law" occurs if the state court identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the prisoner's case or unreasonably refuses to extend the governing legal principle. *See Williams,* 529 U.S. at 413, 120 S.Ct. 1495; *Ramdass,* 530 U.S. at 166, 120 S.Ct. 2113; *Van Tran,* 212 F.3d at 1150. Under this standard of review, a federal court may not issue a writ simply because it concludes in its independent judgment that the state court applied clearly established federal law erroneously or incorrectly. *See Williams,* 529 U.S. at 411, 120 S.Ct. 1495. Rather, for a state court's application of federal law to be unreasonable, it must have been clearly erroneous. *See Van Tran,* 212 F.3d at 1153.

Where a state court does not articulate a rationale for its determination, a review of that court's application of clearly established law is difficult. As the Ninth Circuit explained: "[f]ederal habeas review

---

1. In the petition, petitioner also sought expedited consideration of a stay of the state court proceedings pending disposition of this ac-

tion. The need for a stay from this court was mooted, however, when the state trial judge entered such an order.

is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law." *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000) (citation omitted).

## DISCUSSION

Petitioner contends that the State of Oregon cannot retry him on the three aggravated felony murder charges because a retrial would violate the Double Jeopardy Clause. Because the jury in the second trial had a full opportunity to convict him of aggravated felony murder and the jury returned no such verdict, instead acquitting him on other theories of aggravated murder and on an isolated count of intentional murder, petitioner argues that collateral estoppel bars retrial on the aggravated felony murder charges.

Respondent counters that the jury's inability to reach a verdict does not trigger the Double Jeopardy Clause and prohibit the State of Oregon from retrying petitioner on the counts of aggravated murder. Respondent argues that collateral estoppel applies only where a rational jury could not have grounded its verdict upon an issue other than that which petitioner seeks to foreclose from consideration. Where the jury acts irrationally, however, and the result is inconsistent, respondent argues that the principles of collateral estoppel are inapplicable.

1. *Applicable Law.*

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution declares that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb ...." U.S. CONST. amend. V. This constitutional prohibition "was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). The underlying policy, deeply ingrained in our system of jurisprudence, "is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green,* 355 U.S. at 187–188, 78 S.Ct. 221. In furtherance of this policy, "it has long been settled ... that a verdict of acquittal is final, ending a defendant's jeopardy, and even when 'not followed by any judgment, is a bar to a subsequent prosecution for the same offence.'" *Green,* 355 U.S. at 188, 78 S.Ct. 221 (quoting *United States v. Ball,* 163 U.S. 662, 671, 16 S.Ct. 1192, 41 L.Ed. 300 (1896)).

■ However, neither a jury's failure to reach a verdict nor a trial court's declaration of a mistrial following a hung jury is an event that terminates jeopardy so as to bar a second trial on the mistried charges. *See Richardson v. United States,* 468 U.S. 317, 325, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). In *Richardson,* the jury acquitted the defendant on one substantive narcotics count, but could not agree on the two remaining counts. 468 U.S. at 318–19, 104 S.Ct. 3081. The Court permitted the defendant to be retried, and stated that "[t]he Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree." *Richardson,* 468 U.S. at 326, 104 S.Ct. 3081.

■ The doctrine of collateral estoppel or issue preclusion was first incorporated as a component of double jeopardy protection in *Ashe v. Swenson,* 397 U.S. 436, 90

S.Ct. 1189, 25 L.Ed.2d 469 (1970). In constitutionalizing the doctrine of issue preclusion as encompassed within the Double Jeopardy Clause, the Supreme Court held that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe,* 397 U.S. at 443, 90 S.Ct. 1189. To assess a claim of issue preclusion where acquittal was based upon a jury's general verdict, the Court specified that a reviewing court must:

> [E]xamine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.... [The inquiry] must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.

*Ashe,* 397 U.S. at 444, 90 S.Ct. 1189 (quoting *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 92 L.Ed. 180 (1948)). The petitioner bears the burden of showing "that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling v. United States,* 493 U.S. 342, 350, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

In *Ashe,* the defendant was charged with robbing one of six men at a poker game. The evidence that Ashe was actually one of the robbers was weak, and the jury acquitted him. In a subsequent trial for the robbery of another of the six poker players, this time with stronger identification evidence, Ashe was convicted. The Supreme Court overturned the conviction as barred by the collateral estoppel component of double jeopardy, concluding that the "single rationally conceivable issue in dispute [in the first trial] was whether the petitioner had been one of the robbers. And the jury by its verdict found that he

had not." *Ashe,* 397 U.S. at 445, 90 S.Ct. 1189. "Because the first jury had found that Ashe had not been present at the robbery, the only way he could be convicted was if the second jury found directly to the contrary. Consequently, the collateral estoppel rule prohibited his second prosecution." *Charles v. Hickman,* 228 F.3d 981, 985 (9th Cir.2000) (citing *Ashe,* 397 U.S. at 446–47, 90 S.Ct. 1189).

■ Still, the doctrine of collateral estoppel will not overturn an inconsistent jury verdict. In *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the jury acquitted the defendant on the predicate offenses of drug possession and conspiracy, but convicted on the compound offense of telephone solicitation to distribute drugs. 469 U.S. at 58, 105 S.Ct. 471. The Court rejected the argument that an acquittal on the predicate offenses collaterally estopped the government from maintaining a conviction on the compound offense. The Court stated that "[t]he problem is that the same jury reached inconsistent results; once that is established principles of collateral estoppel— which are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict—are no longer useful." *See Powell,* 469 U.S. at 68, 105 S.Ct. 471.

### 2. *Analysis.*

The first issue is whether the state courts' decision to permit the retrial of petitioner is "contrary to" the Supreme Court's clearly established precedents (1) by applying a rule that contradicts the governing law set forth by the Court's cases or (2) by reaching a result different from that reached by the Court on materially indistinguishable facts. *See Early v. Packer,* —— U.S. ——, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002). Conducting a retrial does not contradict the governing law

set forth by the Court's cases, and would not put petitioner twice in jeopardy for the same offense of aggravated felony murder, because the Court held in *Richardson* that "the failure of the jury to reach a verdict is not an event which terminates jeopardy." 468 U.S. at 325, 104 S.Ct. 3081. Regarding the second prong, the result here is not contrary to the result reached in *Ashe* because the facts in *Ashe*—such as the fact that Ashe faced successive prosecutions rather than a retrial following a hung jury and the fact that the jury *unambiguously* resolved the single rationally conceivable issue—are not materially indistinguishable from the facts here. Therefore, the decision to retry defendant is not "contrary to" clearly established law under either prong, which gives rise to the second issue of whether a retrial would be an "unreasonable application" of clearly established law. *See Early*, 123 S.Ct. at 366 ("decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established law").

To constitute an "unreasonable application" of federal law, the state court must unreasonably apply the principle from the governing cases or refuse to extend the governing legal principle. *See Williams*, 529 U.S. at 413, 120 S.Ct. 1495. Certainly permitting the retrial of petitioner is not an unreasonable application of *Richardson* because retrying petitioner is in accordance with the Court's principle of entitling the government, like the defendant, to resolution of the case by a verdict from the jury. *See Richardson*, 468 U.S. at 326,

104 S.Ct. 3081. Petitioner's argument, therefore, rests on the assertion that the state courts unreasonably refused to extend the doctrine of collateral estoppel from *Ashe* to petitioner's retrial. In light of *Powell*, I am unpersuaded that declining to extend *Ashe* to retrials following a hung jury is an unreasonable application of clearly established federal law.

In *Powell*, the Supreme Court stated that once it is established that the jury reached an inconsistent result, the principles of collateral estoppel are no longer useful. *See* 469 U.S. at 68, 105 S.Ct. 471. Here, the second jury acquitted petitioner on the isolated count of intentional murder but was unable to reach a verdict on the three counts of aggravated murder, of which the questions were whether petitioner intentionally murdered the victim in the course of kidnaping.[2] As in *Powell*, the result here is similarly inconsistent and negates the applicability of collateral estoppel. The jury's inconsistent responses of "no" and "we cannot agree" to the same question cannot be reconciled into a valid and final judgment that determined the ultimate fact of whether petitioner intentionally murdered the victim. *See Ashe*, 397 U.S. at 443, 90 S.Ct. 1189.

Petitioner contends that the result is not inconsistent, and cites two Ninth Circuit cases for the proposition that the combination of an acquittal and a failure to reach a verdict "is not the logically inconsistent mixed verdict of acquittals and convictions to which *Powell* applies." *United States v. Seley*, 957 F.2d 717, 723 (9th Cir.1992); *accord United States v. Romeo*, 114 F.3d

---

**2.** Because the Oregon Supreme Court affirmed the underlying felonies supporting the aggravated felony murder charges in petitioner's appeal from the first trial, *see State v. Wilson*, 323 Or. 498, 500, 918 P.2d 826 (1996), the trial court instructed the jury that it must accept the underlying felonies as proven:

The Oregon Supreme Court further directed that the charges of Kidnapping, Assault, and Abuse of a Corpse not be retried. These charges must be accepted by you as proven beyond a reasonable doubt, and their truth may not be questioned by you in this trial.
Respondent's Excerpt of Record at 61.

141, 144 (9th Cir.1997). In *Seley*, the jury acquitted the defendant of both possession of marijuana with intent to distribute and importation of marijuana, but reached no verdict on the charge of conspiracy to import marijuana. 957 F.2d at 718. On direct review, the court concluded that, given the quantity of marijuana and other evidence at trial, the acquittals on possession and importation meant that the jury found defendant lacked knowledge that he possessed marijuana. *See Seley*, 957 F.2d at 722. The court concluded that under *Ashe*, the government could not retry the defendant for any crime that would necessitate either a finding that he had knowledge of the marijuana or proof of acts that would require such knowledge. *See Seley*, 957 F.2d at 722. Because the government conceded that it would not pursue the conspiracy charge without such evidence, the court affirmed the district court's order dismissing the conspiracy charge. *See Seley*, 957 F.2d at 722.

In *Romeo*, another drug case on direct review, a divided panel of the Ninth Circuit precluded the government from retrying an issue that had been "necessarily decided" by the verdict in the original proceeding. *See Romeo*, 114 F.3d at 143. There, the jury acquitted the defendant of possession with intent to distribute, but reached no verdict on the charge of importation of marijuana. *See Romeo*, 114 F.3d at 143. The court concluded that, because the volume of marijuana was such that a reasonable juror would infer an intent to deliver, the jury's acquittal had necessarily decided that the defendant did not knowingly possess marijuana. *See Romeo*, 114 F.3d at 143. Because knowledge would be an essential element at the retrial for importation of marijuana, the court concluded that collateral estoppel barred the retrial. *See Romeo*, 114 F.3d at 143–44. Judge O'Scannlain dissented, stating that it seemed "oddly surrealistic and irrational" to conclude that collateral estoppel

should operate to decide an issue that the jury confessed to being unable to decide. *See Romeo*, 114 F.3d at 145. Judge O'Scannlain distinguished *Seley* on the ground that in *Seley* knowledge was not an essential element of the conspiracy count that the jury could not decide. *See Romeo*, 114 F.3d at 145.

I find *Seley* to be materially distinguishable from this case, as well as materially distinguishable from *Romeo*. Unlike the court in *Romeo*, the court in *Seley* evaluated the jury's inability to reach a verdict, and concluded that "[t]he hung jury on [the conspiracy] count requires that at least one (but fewer than twelve) of the jurors believed that Seley, while in Colorado, planned to import marijuana, and perhaps purchased the tanks in furtherance of the conspiracy." *Seley*, 957 F.2d at 722. The court next reconciled the hung jury with the acquittals by concluding that "the same juror or jurors must also have believed that Seley abandoned the plan, because the jury unanimously acquitted Seley of the crimes that required a finding that he had knowledge of the marijuana." *Seley*, 957 F.2d at 722. Because the jury's mixed verdict was not inconsistent or irrational, and the ultimate fact established by the jury's acquittal could be reconciled with its failure to reach a verdict on the conspiracy charge, *Powell* certainly had no application. The *Seley* court's reliance on *Pettaway v. Plummer*, 943 F.2d 1041 (9th Cir.1991), illustrates this conclusion: "The mere possibility that the jury acted irrationally, without more, will not negate the collateral estoppel effects of a prior verdict if a rational interpretation of the verdict as a whole is possible." *Seley*, 957 F.2d at 723 (quoting *Pettaway*, 943 F.2d at 1046).

 Like Judge O'Scannlain, I understand *Seley* to mean that collateral estoppel from *Ashe* applies, untempered by *Powell*, to the result of an acquittal and a

hung jury where a rational interpretation of the verdict as a whole is possible. Here, on the other hand, no rational interpretation is possible because the acquittal on the isolated count of intentional murder is flatly inconsistent with the lack of a verdict on the counts of aggravated felony murder, where the only questions were whether petitioner intentionally murdered the victim. On the basis of the inconsistent, irreconcilable result in the jury's verdict, I conclude that *Seley* does not help petitioner.

In *Romeo,* the court found that the acquittal necessarily decided that the defendant lacked knowledge about the marijuana. The court stated that the rationale of *Powell* "has considerably less force when the contention is, as the dissent asserts, that the jury's *verdict* on one count is inconsistent with its *failure to reach a verdict on another count.*" 114 F.3d at 144 (emphasis in original). As stated, I do not read *Seley* as necessarily rendering *Powell* inapplicable if the result is not an acquittal and a conviction. And in any event, even if *Romeo* would be of some binding effect on a trial in this court, in the posture of the present case—habeas review of a state court decision—*Romeo* does not dictate the outcome.

■ Congress has explicitly directed § 2254 habeas petitions to be granted when a state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States.*" 28 U.S.C. § 2254(d)(1) (emphasis added); *see also Luna v. Cambra,* 306 F.3d 954, 960 (9th Cir.2002) (stating that Supreme Court precedent is the only authority controlling under AEDPA, while Ninth Circuit case law is persuasive authority). As the Ninth Circuit itself has

stated "we may not, of course, reverse a state court's decision simply because it is inconsistent with a rule established by a Ninth Circuit case." *See Van Tran,* 212 F.3d at 1154. Thus, although in a non-habeas case a divided panel of the Ninth Circuit applied collateral estoppel to the irreconcilable result in an acquittal and a hung jury, for a state court to act otherwise would not be an unreasonable application of clearly established law mandating that the present habeas petition be granted. The applicability of collateral estoppel to an irrational jury result is subject to strong judicial debate, as reflected in the dissent of Judge O'Scannlain in *Romeo, supra.*

The remaining issue is whether petitioner's retrial is prohibited because, under Oregon law, intentional murder is a true lesser included offense of aggravated felony murder.[3] Intentional Murder is defined under ORS 163.115 as:

(1) Except as provided in ORS 163.118 [first-degree manslaughter] and 163.125 [second-degree manslaughter], criminal homicide constitutes murder:

(a) When it is committed intentionally, except that it is an affirmative defense that, at the time of the homicide, the defendant was under the influence of an extreme emotional disturbance;

(b) When it is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit any of the following crimes in the course of and in furtherance of the crime the person is committing or attempting to commit, or during the immediate flight therefrom, the person, or another participant if there be any, causes the death of a person other than one of the participants:

\* \* \* \* \* \*

---

**3.** As petitioner notes, intentional murder is not the sole lesser included offense to aggravated felony murder. Indeed, the jury in peti-

tioner's second trial was instructed on the lesser included offense of felony murder.

(E) Kidnaping in the second degree as defined in ORS 163.225;

(F) Kidnaping in the first degree as defined in ORS 163.235.

Aggravated Murder is defined in ORS 163.095, which reads:

As used in ORS 163.105 and this section, "aggravated murder" means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

. . . . .

(2)(d) Notwithstanding ORS 163.115(1)(b), the defendant personally and intentionally committed the homicide under the circumstances set forth in ORS 163.115(1)(b).

■ As the Oregon Court of Appeals stated, albeit in dictum, "an intentional murder committed during the course of a qualifying felony constitutes a single offense of aggravated murder, rather than two separate crimes of intentional murder and felony murder." *State v. Beason,* 170 Or.App. 414, 430, 12 P.3d 560, 569 (2000). This conclusion is consistent with *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in which the Supreme Court stated "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." [4] 284 U.S. at 304, 52 S.Ct. 180.

Addressing the *Blockburger* test in the context of a double jeopardy argument, the Supreme Court stated:

If the two offenses are the same under this test for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions. *See In re Nelsen,* 131 U.S. 176, 187–88, 9 S.Ct. 672, 33 L.Ed. 118 (1889); *cf. Gavieres v. United States,* 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911). Where the judge is forbidden to impose cumulative punishment for two crimes at the end of a single proceeding, the prosecutor is forbidden to strive for the same result in successive proceedings. Unless 'each statute requires proof of an additional fact which the other does not,' *Morey v. Commonwealth,* 108 Mass. 433, 434 (1871), the Double Jeopardy Clause prohibits successive prosecutions as well as cumulative punishment.

*Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). However, the *Brown* Court stated in a footnote that "We are not concerned here with the double jeopardy questions that may arise when a defendant is retried on the same charge after a mistrial . . . ." *Brown,* 432 U.S. at 165 n. 5, 97 S.Ct. 2221.

■ The distinction here is that the charge of intentional murder in count 9 was a separate offense, not a lesser included part of the three counts of aggravated felony murder. Although the jury needed to determine whether petitioner intentionally murdered the victim to convict on the counts of aggravated felony murder, the acquittal on the count of intentional murder was not a verdict on the lesser included offense of aggravated felony murder. In fact, as respondent notes, the trial court instructed the jury that the lesser included offense on the counts of aggravated felony murder was felony murder. Although perhaps the sentences for intentional murder and aggravated felony murder would have merged, the acquittal of intentional murder does not bar a retrial on the counts of

4. Moreover, the trial court recognized this in petitioner's first trial, when the sentence for the intentional murder conviction was merged (at the State's urging), with the sentence for the first aggravated felony murder charge.

aggravated felony murder. Furthermore, here the State of Oregon brought all charges against petitioner in one proceeding, unlike the successive proceedings at issue in *Brown*.

In short, the verdicts, or lack thereof, are simply inconsistent, irrational and inconclusive. If the jury had doubts about whether petitioner intentionally murdered the victim during the course of kidnaping, it should have acquitted petitioner of aggravated felony murder. The jury did not acquit on three counts of aggravated felony murder and did not complete its work. Upon an independent review of the state record, the state trial court's denial of petitioner's motion to bar his retrial and the Oregon Supreme Court's denial of petitioner's Writ of Mandamus were not contrary to, or an unreasonable application of, clearly established federal law as set forth by the Supreme Court.

## CONCLUSION

The Petition for Writ of Habeas Corpus (# 1) is DENIED.