**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GREGORY PAUL WILSON,
           *Petitioner-Appellant,*

v.

BRIAN BELLEQUE, Oregon State
Penitentiary,
           *Respondent-Appellee.*

No. 07-35478

D.C. No.
CV-06-00951-ALA

OPINION

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted
August 28, 2008—Seattle, Washington

Filed February 5, 2009

Before: Thomas G. Nelson, Michael Daly Hawkins, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

## COUNSEL

Richard L. Wolf (argued), Portland, Oregon, C. Renee Manes, Assistant Federal Public Defender, Portland, Oregon, for the petitioner-appellant.

Hardy Myers, Attorney General of the State of Oregon, Mary Williams, Solicitor General, Timothy A. Sylwester, Assistant Attorney General, David B. Thompson (argued), Salem, Oregon, for the respondent-appellee.

## OPINION

BYBEE, Circuit Judge:

Gregory Paul Wilson appeals the district court's denial of his petition for a writ of habeas corpus to prevent the State of Oregon from retrying him on three charges of felony murder. We first address two jurisdictional issues: Whether Wilson is currently "in custody" within the meaning of 28 U.S.C. § 2241(c)(3), and whether we may consider his appeal when no certificate of appealability ("COA") has been issued. 28 U.S.C. § 2253(c)(1)(A). Concluding that Wilson's appeal is properly before us, we reject his double jeopardy claim and affirm the district court's denial of habeas relief.

I

In July 1992, a woman named Misty Largo was murdered. Wilson was indicted in connection with her death by an Oregon grand jury on September 14 of the same year. In early 1993, the state filed a superseding indictment. Oregon has since tried Wilson twice on the charges included in this superseding indictment. The State now seeks to try him for a third time on felony murder charges.

Before enumerating the precise charges Wilson faced in his previous two trials, a rudimentary summary of the Oregon murder statutes is necessary. Oregon law recognizes three general types of murder that are relevant to this appeal. The first type is intentional murder. *See* Or. Rev. Stat. § 163.115(1)(a) ("[C]riminal homicide constitutes murder . . .

[w]hen it is committed intentionally."). The second type is felony murder, which requires that the murder be committed "in the course of and in furtherance of" one of several statutorily enumerated felonies. OR. REV. STAT. § 163.115(1)(b). The State is not required to prove that the defendant personally committed the murder to sustain a felony murder charge under § 163.115(1)(b). Aggravated murder, the third type, is the most serious murder charge available. Among other circumstances, a defendant is guilty of aggravated murder where he "personally and intentionally" murdered the victim in the course of and in furtherance of committing one of the felonies enumerated in the felony murder statute. OR. REV. STAT. § 163.095(2)(d).

The superseding indictment against Wilson contained nine counts of aggravated murder, one count of intentional murder, and four counts of felony murder, as well as charges of kidnapping in the first and second degrees, assault in the third degree, and abuse of a corpse. When Wilson was arraigned on the superseding indictment, however, the prosecution moved to dismiss the four felony murder counts. Wilson was convicted of the remaining fifteen charges. On direct appeal, the Oregon Supreme Court reversed Wilson's convictions on all ten murder charges—nine aggravated murder charges and one ordinary intentional murder charge—but affirmed his remaining convictions. *State v. Wilson*, 918 P.2d 498 (Or. 1996). The court remanded the case for a new trial on the various murder charges.

In August of 2000, Wilson was retried on eight of the aggravated felony murder charges as well as the intentional murder charge. Counts one through eight set forth different theories of aggravated murder and count nine charged Wilson with ordinary intentional murder. The trial court also instructed the jury on lesser included offenses corresponding to each charged offense: felony murder with respect to counts one through three, attempted aggravated murder with respect to counts four through eight, and attempted murder with

respect to count nine. Wilson did not object to the trial court's instructions on these lesser included charges.

The trial court further instructed the jury, over Wilson's objection, that it could not consider any of the lesser included offenses unless and until it acquitted Wilson of the corresponding charged offense. The instruction was consistent with Oregon law. Although the Oregon Supreme Court had declared "acquittal-first" instructions of this kind unlawful in 1986, *see State v. Allen*, 717 P.2d 1178, 1181 (Or. 1986) (per curiam), in 1997 the Oregon legislature statutorily overruled *Allen. See* OR. REV. STAT. § 136.460(2) ("Only if the jury finds the defendant not guilty of the charged offense may the jury consider a lesser included offense.").

The jury returned a mixed verdict. With respect to counts four through eight, the jury acquitted Wilson of the aggravated murder charges but convicted him of the lesser included offenses of attempted aggravated murder under those counts. With respect to count nine, the jury acquitted Wilson of the intentional murder charge but convicted him of the lesser included offense of attempted murder. The jury was unable to reach a verdict on the aggravated murder charges in counts one through three and, consistent with the trial court's instruction, did not reach the lesser included offenses of felony murder under those counts. The trial court accepted the verdicts, entered a mistrial as to counts one through three, and set them for retrial.

Wilson then sought a writ of mandamus from the Oregon Supreme Court, arguing that his Fifth Amendment right against double jeopardy barred Oregon from retrying him on aggravated murder charges. After the Oregon Supreme Court denied all relief, Wilson filed a petition for a federal writ of habeas corpus under 28 U.S.C. § 2254. The district court denied habeas relief, holding that, given the jury's inconsistent verdicts on the aggravated and intentional murder charges, it was not an unreasonable application of clearly

established federal law for the state court to allow retrial on the aggravated murder charges. *Wilson v. Czerniak*, 238 F. Supp. 2d 1207, 1214-16 (D. Or. 2002).

On appeal, we reversed the decision of the district court. We noted that, under Oregon law, a conviction for aggravated murder requires the state to prove, among other elements, that the homicide was "committed intentionally." *Wilson v. Czerniak*, 355 F.3d 1151, 1155 (9th Cir. 2004) ("*Wilson I*"). We further noted that "intentional murder does not require proof of any element not contained within aggravated felony murder." *Id.* at 1155. We therefore held that Wilson's acquittal on the intentional murder charge barred Oregon from retrying him for aggravated murder. *Id.* at 1155-57.

In reversing the district court's denial of Wilson's habeas petition, we made clear that our decision "rest[ed] entirely on the intentional murder acquittal." *Id.* at 1156. We did not address, and Wilson did not ask us to address, whether the jury verdicts in his 2000 trial barred Oregon from prosecuting him on ordinary felony murder charges. On remand from our court, however, Wilson nonetheless asked the district court to bar retrial on the lesser-included offenses of felony murder. The district court denied this request and issued an order barring Oregon from retrying Wilson on aggravated murder charges only.

Thereafter, the State announced its intention to retry Wilson on the three ordinary felony murder charges. On July 7, 2006, Wilson commenced the instant petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking to prevent his retrial on these charges. The district court stayed further state proceedings[1] and, on April 30, 2007, denied Wilson's habeas petition. Wilson timely appealed to this court.

---

[1]Prior to the district court's stay order, Wilson's trial had been scheduled to begin in October 2006.

## II

Before we may reach the merits of this case, we must first establish that we have jurisdiction to consider Wilson's habeas claims. The State argues that we lack jurisdiction for two reasons. First, the State contends that Wilson is not "in custody" with respect to the charges at issue in this case and, therefore, that the district court lacked jurisdiction to consider his habeas petition under 28 U.S.C. § 2241(c)(3). Second, the State argues that because Wilson has not obtained a certificate of appealability ("COA") in this matter, we are precluded from reaching the merits of his petition. *See* 28 U.S.C. § 2253(c)(1)(A). We consider each of these arguments in turn.

### A.   *Custody Under 28 U.S.C. § 2241*

Although Wilson's prior habeas petition was filed pursuant to 28 U.S.C. § 2254, we have clarified that a habeas petition raising a double jeopardy challenge to a petitioner's pending retrial in state court is properly treated as a petition filed pursuant to 28 U.S.C. § 2241. *See Stow v. Murashige*, 389 F.3d 880, 885 (9th Cir. 2004). Accordingly, both Wilson and the State agree that, if jurisdiction is proper in the instant case, it rests on § 2241. At oral argument, however, the State suggested for the first time that the district court lacked jurisdiction to entertain Wilson's habeas petition.

**[1]** Section 2241(c)(3) states that the writ shall not extend to a state prisoner unless "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." The text of the statute makes clear, and the Supreme Court has confirmed, that "custody" is a jurisdictional prerequisite to habeas review under § 2241(c)(3). *See Hensley v. Mun. Court*, 411 U.S. 345, 351 (1973) ("The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty."). The State argues that Wilson cannot meet this custodial requirement.

**[2]** The State does not, nor could it argue that Wilson is not in custody. Wilson is currently incarcerated as a result of convictions obtained at his 1993 and 2000 trials. By its own terms, however, § 2241(c)(3) does not encompass any petitioner who is in custody; rather, to obtain habeas review, a petitioner must allege that he is "in custody in violation of the Constitution or laws or treaties of the United States." In this case, Wilson does not challenge the convictions for which he is currently incarcerated. The State argues therefore that, even if the charges currently pending in Oregon state court are in fact barred by the Double Jeopardy Clause, Wilson is not "in custody" with respect to them and thus may not obtain habeas review under § 2241(c)(3) at this time. Although this argument has some force, the Supreme Court cases interpreting the custodial requirement compel us to reject it.

We note at the outset that the Supreme Court has construed the phrase "in custody" very broadly. "[T]he use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody." *Jones v. Cunningham*, 371 U.S. 236, 239 (1963). To satisfy the custody requirement, the Supreme Court has held that a petitioner must show that he is subject to a significant restraint upon his liberty "not shared by the public generally." *Id.* at 240. For example, the custodial requirement has been held met by prisoners released on parole, *id.* at 242-43, prisoners released on their own recognizance, *Hensley*, 411 U.S. at 351, and prisoners free on bail, *Lefkowitz v. Newsome*, 420 U.S. 283, 286 n.2, 291 n.8 (1975).

**[3]** The question before us today is whether the current "in custody" jurisprudence should be construed to include circumstances where the sovereign seeking to prosecute a petitioner is currently detaining the petitioner based on convictions or charges not being challenged. We believe that such an extension is justified under the unique circumstances of this case and therefore hold that Wilson is "in custody" within the meaning of § 2241.

There is little doubt that had Wilson not already been incarcerated when the State sought to try him for felony murder he would have either been held pending trial or released on his own recognizance. Under the Supreme Court's past decisions, either of these restrictions would have sufficed to confer habeas jurisdiction under § 2241(c)(3). *See, e.g.*, *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 300-01 (1984). It would be illogical to conclude that a petitioner released on his own recognizance with an obligation to appear for trial is "in custody" for the purpose of habeas review but an incarcerated petitioner who is forced to appear in court to answer new charges is not. The Supreme Court's decisions preclude such an unreasonable conclusion.

**[4]** Two Supreme Court cases in particular lead us to the conclusion that Wilson is "in custody." First, in *Peyton v. Rowe*, 391 U.S. 54 (1968), the Supreme Court held that a prisoner serving consecutive sentences is "in custody" under any one of them and thus can challenge a sentence that he is scheduled to serve in the future. The Court reasoned that a contrary rule "represents an indefensible barrier to prompt adjudication of constitutional claims in the federal courts." *Id.* at 55.

Had *Peyton* represented the Supreme Court's last word on this subject, our decision in this case would be a difficult one. The petitioner in *Peyton* had already been tried and convicted. The Court's decision in that case did not address whether the doctrine allowing for challenges to future confinement applies where a petitioner has not yet been placed on trial. The Supreme Court resolved that question in *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973).

**[5]** In *Braden*, the petitioner was serving a sentence in an Alabama prison. *Id.* at 485. He brought a petition for a writ of habeas corpus in the United States District Court for the Western District of Kentucky, alleging that Kentucky's failure to afford him a trial on a then three-year-old indictment vio-

lated his constitutional right to a speedy trial. *Id.* at 485. Much of the *Braden* Court's opinion is devoted to analyzing whether Braden's petition was properly filed in the Western District of Kentucky or in the federal district courts of Alabama. However, before reaching that question, the Court examined whether Braden was entitled "to raise his speedy trial claim on federal habeas corpus at this time." *Id.* at 488. The Court observed that it had "adopt[ed] a more expansive definition of the 'custody' requirement of the habeas statute" and it was now "possible for prisoners in custody under one sentence to attack a sentence which they had not yet begun to serve. And it also enable[s] a petitioner held in one State to attack a detainer lodged against him by another State." *Id.* at 498. The Court thus held that Braden was "currently 'in custody' " for purposes of § 2241(c)(3). *Id.* at 488.

There is no material difference between *Braden* and the instant case. Wilson is currently incarcerated and does not challenge the prior convictions that led to his incarceration. However, this was equally true of the petitioner in *Braden*. *See id.* at 486 ("The validity of petitioner's conviction on the Alabama felonies is not at issue here . . . ."). Indeed, the only arguably relevant difference between *Braden* and the instant case favors Wilson's position. The petitioner's claim in *Braden* was that the *inaction* of Kentucky authorities violated his constitutional right to a speedy trial, and the relief he sought was an order directing Kentucky to afford him an immediate trial. *Id.* at 485. By contrast, in this case Wilson seeks to *prevent* the State of Oregon from placing him on trial.

We recognize that the *Braden* Court left open in a footnote "whether, if no detainer had been issued against [Braden, he] would be sufficiently 'in custody' to attack the Kentucky indictment in an action in habeas corpus." 410 U.S. at 489 n.4. Unlike in *Braden*, nothing in the record here indicates that Oregon has issued a detainer against Wilson in relation to the charges now at issue. However, the context of the Court's reference to the detainer lodged against Braden is

important. In the previous sentence, the Court had declared that "[s]ince the Alabama warden acts here as the agent of the Commonwealth of Kentucky in holding the petitioner pursuant to the Kentucky detainer," the petitioner was "in custody." *Id.* Immediately thereafter, the Court noted that its conclusion may have been different if no detainer existed. The Court thus referred to the detainer lodged by Kentucky only for the proposition that Alabama was acting as Kentucky's agent, a fact the Court felt necessary to reach its conclusion that Braden was in custody on the Kentucky charges despite being physically confined by the Alabama authorities.

**[6]** Read in context then, we think the most logical reading of this passage is that issuance of a detainer is at most a jurisdictional requirement in those cases in which the sovereign that retains physical custody over the petitioner is distinct from the sovereign that has lodged the detainer. This interpretation is consistent with post-*Braden* cases. *See, e.g.*, *Harrison v. Ollison*, 519 F.3d 952, 955 (9th Cir. 2008) (citing *Braden* for the proposition that a "petitioner may challenge future imposition of sentence for which detainer has been lodged while in custody for [an] earlier sentence *of [a] different sovereign*" (emphasis added)); *Rose v. Morris*, 619 F.2d 42, 43 (9th Cir. 1980) ("A *state* detainer warrant against a *federal* prisoner is sufficient 'custody' to confer habeas corpus jurisdiction." (emphases added)).

**[7]** Our interpretation is buttressed by the *Braden* Court's explanation of *why* the petitioner in that case was "in custody." In support of its conclusion, the Court explained that its decision five years earlier in *Peyton* had discarded the "prematurity doctrine" and thus permitted a prisoner to attack confinement "that would be imposed in the future." *Braden*, 410 U.S. at 488-89. The petitioner in *Braden* was thus permitted to maintain an action under § 2241(c)(3) based on future confinement that would be imposed in connection with the Kentucky charges. Because the *Braden* Court made clear that the district court's jurisdiction in cases like this one is based on

*future* as opposed to *present* confinement, the presence or absence of a detainer simply has no significance, at least in cases where the sovereign with physical custody and the sovereign pursuing new charges are not distinct.

Finally, this interpretation comports with common sense. If a prisoner is being held by one sovereign and a separate sovereign wishes to place that individual on trial for a different offense, a detainer is at least arguably necessary[2] to ensure that the state with physical custody makes the prisoner available for trial in the non-holding state and that the prisoner is not simply released if and when he completes the sentence imposed by the holding state. By contrast, where, as here, a petitioner is being held by the *same* sovereign that seeks to try him on different charges, the situation is markedly different.

[8] This case illustrates that distinction. The State of Oregon has Wilson in its custody. Prior to the district court's action staying state court proceedings in this matter, Wilson's trial was set for October 2006. There can be no doubt that, unless Wilson is granted habeas relief, Oregon authorities will ensure his appearance at trial and duly execute any sentence imposed based upon these charges. In such a situation, a detainer requirement serves no legitimate purpose and is wholly inconsistent with the policy, underlying the Court's decisions in *Braden* and *Peyton*, of encouraging prompt resolution of federal constitutional claims. We decline to give *Braden* an interpretation that elevates form over substance, and renders that decision entirely inapplicable for no logical reason in a large portion of the cases to which it would otherwise apply. We therefore conclude that Wilson is "in custody" for purposes of § 2241(c)(3).

---

[2]As the issue is not before us, we express no opinion on whether a detainer would in fact be necessary to confer jurisdiction under § 2241(c)(3) in such a situation.

B.   *Certificate of Appealability*

**[9]** Our conclusion that Wilson satisfies § 2241(c)(3)'s custodial requirement does not end our jurisdictional inquiry, however. 28 U.S.C. § 2253(c)(1)(A), states that a COA is required to appeal from "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court." No COA has been issued in this case either by the district court or this court. As an initial matter, Wilson argues that § 2253(c)(1)(A)'s COA requirement does not encompass cases, like this one, where a habeas petition is filed pursuant to § 2241(c)(3). Wilson further requests that we grant him a COA should we determine that one is necessary for us to reach the merits of his appeal.

**[10]** We conclude that the mere fact that a habeas petition is filed pursuant to § 2241(c)(3) does not exempt that petition from § 2253(c)(1)(A)'s COA requirement. In *McNeely v. Blanas*, 336 F.3d 822, 832 n.10 (9th Cir. 2003), we stated "that the applicability of the COA requirement to an appeal in a habeas case brought by a state pretrial detainee under § 2241 is an open question in this Circuit." We have since never expressly held that a § 2241(c)(3) petitioner must obtain a COA. However, we have clarified that "analysis of whether a COA is necessary does not turn on whether [a petitioner's] petition is considered under 28 U.S.C. § 2241 or 28 U.S.C. § 2254." *White v. Lambert*, 370 F.3d 1002, 1010 n.7 (9th Cir. 2004). We also recently stated, albeit in dicta, that "state prisoners proceeding under § 2241 must obtain a COA . . ." *Harrison v. Ollison*, 519 F.3d 952, 958 (9th Cir. 2008). The circuits that have expressly considered the issue have concluded that a state prisoner proceeding under § 2241 must obtain a COA where the target of the habeas petition arises out of process issued by a state court. *See Greene v. Tenn. Dep't of Corrs.*, 265 F.3d 369, 371 (6th Cir. 2001); *United States v. Cepero*, 224 F.3d 256, 264 (3d Cir. 2000); *Montez v. McKinna*, 208 F.3d 862, 869 (10th Cir. 2000); *Stringer v. Williams*, 161 F.3d 259, 262 (5th Cir. 1998).

**[11]** We confirm what our cases have previously suggested, and join the other circuits in holding that a state prisoner who is proceeding under § 2241 must obtain a COA under § 2253(c)(1)(A) in order to challenge process issued by a state court. There is no analytically sound way to conclude that petitioners like Wilson are "in custody" for purposes of § 2241(c)(3) but not challenging a "detention" under § 2253(c)(1)(A). Wilson points to *White* and *Rosas v. Nielson*, 428 F.3d 1229 (9th Cir. 2005), for the proposition that § 2241(c)(3)'s reference to "custody" is broader than § 2253(c)(1)(A)'s reference to "detention." In both *White* and *Rosas*, we held that a COA was not necessary because the decision being challenged was administrative, not judicial. *See Rosas*, 428 F.3d at 1232; *White*, 370 F.3d at 1010 ("We hold that a COA is not required when a state prisoner challenges an administrative decision regarding the execution of his sentence."). In other words, we concluded that a COA was not necessary because "the detention complained of" did not "arise[ ] out of process issued by a state court." In neither of those cases did we conclude that the petitioner was not challenging a detention decision at all. (We also note that 28 U.S.C. § 2253(c)(1)(B), the provision concerning COA requirements for federal prisoners, explicitly states that a COA is required to appeal from any "final order in a proceeding under section 2255." By contrast, in setting forth COA requirements for state prisoners, Congress did not state that a COA was required to appeal from "the final order in a proceeding under section 2254." Rather, Congress stated, more broadly, that a COA is required where "the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A). We agree with the Tenth Circuit's conclusion that, had Congress intended to restrict the COA requirement for state detainees to petitions brought pursuant to § 2254, it would have simply employed the same straightforward language that it used in § 2253(c)(1)(B). *See Montez*, 208 F.3d at 868. We thus follow § 2253(c)(1)(A) and conclude that a state petitioner proceeding under § 2241 must

obtain a COA where the target of the habeas petition arises out of process issued by a state court.

**[12]** In this case, the target of Wilson's habeas petition plainly arises out of process issued by a state court. The Oregon courts have rejected Wilson's double jeopardy challenge and the state trial court had set the matter for trial before the district court stayed state court proceedings. Accordingly, we conclude that a COA is required for us to consider the merits of Wilson's habeas petition and we now consider whether Wilson is entitled to a COA.

**[13]** Under 28 U.S.C. § 2253(c)(2), a COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." In applying this standard, the Supreme Court has counseled that "a court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief." *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003). Thus, the Supreme Court has made clear that the standard for obtaining a COA is not a particularly exacting one. In *Slack v. McDaniel*, 529 U.S. 473, 479 (2000), the Court declared that a COA should issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." In *Miller-El*, the Court further clarified that a habeas petitioner need not "prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus" and that "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." 537 U.S. at 338. *See also Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) ("[T]he COA requirement constitutes a gatekeeping mechanism that prevents us from devoting judicial resources on frivolous issues while at the same time affording habeas petitioners an opportunity to persuade us through full briefing and argument of the potential merit of issues that may appear, at first glance, to lack merit."); *Jefferson v. Welborn*, 222 F.3d

286, 289 (7th Cir. 2000) (stating that a COA should issue unless the claims are "utterly without merit").

**[14]** With this non-demanding standard firmly in mind, we conclude that Wilson's double jeopardy claim warrants issuance of a COA. This is a procedurally complicated case and, as noted above, we have already held that Wilson's acquittal on intentional murder charges precluded the State from retrying him on charges of aggravated felony murder. Given the past history of this case, the State's subsequent decision to charge Wilson with non-aggravated felony murder at the very least raises eyebrows. Furthermore, the jury failed to reach a verdict at Wilson's 2000 trial on the felony murder charges at issue here not because deliberations failed to produce agreement—the classic case of "manifest necessity" justifying a mistrial, *see Richardson v. United States*, 468 U.S. 317, 323 (1984) (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824))—but because an instruction to which Wilson objected at trial prevented the jury from considering those charges. Under these circumstances, we think that Wilson "deserve[s] encouragement to proceed further," *Slack*, 529 U.S. at 484, in his claim that the Double Jeopardy Clause prohibits his retrial on felony murder charges.

Before granting Wilson a COA, however, we must address one unusual circumstance presented by this case. In the typical case, an application for a COA comes to us following a district court decision expressly denying the applicant's request. In this case, Wilson filed a timely notice of appeal after the district court issued its decision denying Wilson's habeas petition. However, Wilson did not expressly apply to the district court for a COA. Consistent with his arguments on appeal, Wilson's counsel apparently did not believe that a COA was necessary because Wilson's habeas petition was filed pursuant to § 2241. Wilson contends, and the State does not dispute, that he requested leave to brief the appropriateness of a COA if the district court felt that a COA was neces-

sary. However, the district court neither requested briefing nor took any action granting or denying Wilson a COA.

The district court's failure to address the COA issue is arguably significant because our own rules provide that we "will not act on a motion for a COA if the district court has not ruled first." Ninth Cir. R. 22-1(a). However, unlike § 2253(c)(1)(A)'s mandate that a COA must issue prior to our consideration of the merits of Wilson's habeas petition, Ninth Circuit Rule 22-1(a) does not set forth a jurisdictional requirement. This point is demonstrated by our decision in *United States v. Martin*, 226 F.3d 1042 (9th Cir. 2000). We stated in *Martin* that "*Slack*'s instruction that courts of appeals are to construe a notice of appeal as an application for a COA so as to do substantial justice, then, necessarily overrode the application of Rule 22-1 in the situation presented by *Slack* and by this appeal." *Id.* at 1047.

At the time of the petitioners' appeals in both *Slack* and *Martin*, existing cases had held that a habeas petitioner did not need to obtain a COA if the petition was filed before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Accordingly, the petitioners had not applied for a COA in the district court and the district court had taken no action granting or denying a COA. In *Slack*, however, the Supreme Court rejected the Ninth Circuit's construction of § 2253(c)(1)(A), and held that when a habeas petitioner appeals the dismissal of a habeas petition prior to AEDPA's effective date, § 2253(c)(1)(A)'s COA requirement applies. 529 U.S. at 481-83. In *United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001), we noted *Martin*'s holding but declined to decide whether this court could issue a COA under other circumstances where the district court had not yet acted.

*Martin* and *Slack* presented factual scenarios somewhat different than that presented here. As noted above, prior to *Slack*, Ninth Circuit case law had expressly held that petitioners did

not need to obtain a COA if their petition was initially filed before AEDPA's effective date. By contrast, no Ninth Circuit decision has ever held that petitioners in Wilson's situation did not need to obtain a COA; the issue was simply undecided in this Circuit at the time this matter was before the district court.

[15] Notwithstanding this difference, however, we conclude, as we did in *Martin*, that *Slack*'s instruction to construe a notice of appeal as an application for a COA so as to do substantial justice counsels against remanding this case to the district court with instructions to act on Wilson's COA request in the first instance. At the time Wilson filed his notice of appeal, though dicta in *White* had indicated that whether a COA was required did not depend on whether a petition was filed pursuant to § 2241 or § 2254, we had never expressly held that a state prisoner proceeding under § 2241 needed to obtain a COA. Wilson requested leave to brief the appropriateness of a COA if the district court felt that one was necessary, but the district court did not request briefing. The district court thus had an opportunity to address the COA issue and declined to do so. For its part, the State never raised the COA issue until *we* ordered briefing on the question immediately prior to oral argument in this case. This matter has been fully briefed and argued. Deferring consideration of the issues in this case until the district court expressly acts on Wilson's COA request would serve no useful purpose and would be contrary to the *Slack* Court's admonition that we construe a notice of appeal as an application for a COA so as to do substantial justice. We therefore grant Wilson a COA on his double jeopardy claim and proceed to consider this aspect of his petition on the merits.[3]

---

[3]In addition to his claim that retrying him on felony murder charges would violate the Double Jeopardy Clause, Wilson also contends that retrial would violate his rights under the Due Process Clause and seeks a COA with respect to that claim as well. Wilson argues that the State "intentionally abandoned" the theory underlying the felony murder charge

III

We review de novo a district court's decision granting or denying a petition for a writ of habeas corpus filed pursuant to § 2241. *Angulo-Dominguez v. Ashcroft*, 290 F.3d 1147, 1149 (9th Cir. 2002). A petition filed pursuant to § 2241 is not reviewed under the deferential standards imposed by AEDPA. *Murashige*, 389 F.3d at 888. Accordingly, we must grant Wilson habeas relief if we conclude on de novo review that retrying him on felony murder charges would violate the Double Jeopardy Clause. We need not further consider, as we would for a petition filed pursuant to 28 U.S.C. § 2254, whether the decisions of the Oregon courts permitting retrial were "contrary to" or an "unreasonable application of" clearly established federal law as determined by the Supreme Court. Notwithstanding this more favorable standard of review, we conclude that Wilson's double jeopardy claim must be rejected.

and that it is thus fundamentally unfair to try him based on that theory now. However, as the district court noted, Oregon law is clear that lesser included offenses are automatically included under charged offenses and that ordinary felony murder is a lesser included offense to the aggravated murder charges of which Wilson was charged. The jury at Wilson's 2000 trial was properly instructed as to the felony murder charges now at issue and Wilson did not object at that time. The State's dismissal of the stand-alone felony murder charges before Wilson's first trial is simply attributable to the fact that separately charging a lesser-included offense is considered superfluous and may subject an indictment to demurrer under Oregon law. *See* OR. REV. STAT. § 132.550(7); OR. REV. STAT. § 135.630(2); *Oregon v. Gibbons*, 364 P.2d 611, 613 (Or. 1961) ("It is unnecessary verbiage to include in indictments the lesser included offenses derived from the offense charged. It is a well established rule that an indictment of one offense includes, by necessary implication, charges of lesser included offenses.") (internal quotation marks omitted). The State never "abandoned" the felony murder charges at issue here. Wilson thus has failed to make "a substantial showing of the denial of a constitutional right," *see* 28 U.S.C. § 2253(c)(2), with respect to his due process claim and we do not grant him a COA as to that claim.

**[16]** The Fifth Amendment's protection against double jeopardy, made applicable to the States by the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 795-96 (1969), bars both: (1) a successive prosecution on the "same offense" of which a defendant has been previously acquitted or convicted, *Brown v. Ohio*, 432 U.S. 161, 165-66 (1977); and (2) relitigation of an issue that has been resolved in the defendant's favor in a prior prosecution. *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). Furthermore, "the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Richardson*, 468 U.S. at 325. We consider whether any of these three interrelated doctrines bars Wilson's retrial on felony murder charges.

A. *The Same Offense Analysis*

**[17]** To determine whether two offenses are the "same" for double jeopardy purposes, a court must determine "whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696 (1993) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Conversely, "[d]ouble jeopardy is not implicated so long as each violation requires proof of an element which the other does not." *United States v. Vargas-Castillo*, 329 F.3d 715, 720 (9th Cir. 2003) (citation omitted). "If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Ianelli v. United States*, 420 U.S. 770, 785-86 n.17 (1975).

**[18]** Applying this test, we conclude that, as defined under Oregon law, felony murder is not the same offense as intentional murder, the crime of which Wilson was acquitted. Section 163.115(1)(a) of the Oregon Revised Statutes straightforwardly states that "criminal homicide constitutes

murder when it is committed intentionally." By contrast, in defining felony murder, Oregon law does not require the defendant to intentionally cause death. Indeed, in cases in which a defendant commits the underlying felony with the assistance of another person, the statute does not require the defendant to have personally killed the victim at all. *See* OR. REV. STAT. § 163.115(1)(b). Furthermore, the crime of felony murder requires that the murder be committed "in the course of and in furtherance of" one of several statutorily enumerated felonies. OR. REV. STAT. § 163.115(1)(b). This requirement does not apply to intentional murder. *See* OR. REV. STAT. § 163.115(1)(a).

Wilson thus does not squarely address whether felony murder and intentional murder are the same offense under the *Blockburger* test. He argues, however, that Oregon law specifies that all forms of homicide are merely alternative theories of the same crime. Wilson thus claims that, notwithstanding the different elements of the two offenses, they must be regarded as the same for double jeopardy purposes.

As a threshold matter, we think Wilson mischaracterizes Oregon law. The Oregon decisions upon which Wilson relies merely hold that multiple *convictions* for murder merge into the most serious offense. *See, e.g.*, *State v. Tiner*, 135 P.3d 305, 314 (Or. 2006) (holding that trial court erred in failing to merge the defendant's intentional murder conviction into one of his two convictions for aggravated murder); *State v. Walraven*, 167 P.3d 1003, 1008 (Or. Ct. App. 2007) (holding that conviction for felony murder merged with conviction of aggravated murder of the same victim). The cases do not suggest that an acquittal on one charge bars retrial on either an offense with different elements or on a lesser included offense on which a previous jury deadlocked. To the contrary, the Oregon Court of Appeals has expressly held that an acquittal on a greater, charged offense does not preclude retrial on a lesser-included offense that was submitted to the jury but on which the jury did not reach a verdict. *See State v. Perks*, 847

P.2d 866, 868 (Or. Ct. App. 1993). There is no convincing evidence that the Oregon Supreme Court would rule differently. *See Munson v. Dell Taco, Inc.*, 522 F.3d 997, 1002 (9th Cir. 2008).

Even if we accepted Wilson's description of Oregon law, however, the *Blockburger* test "emphasizes the elements of the two crimes," *Brown*, 432 U.S. at 166, not the particularities of a state statutory classification scheme. If, contrary to our interpretation, the Oregon courts conclude on remand that Wilson's analysis of Oregon law is accurate, they are obviously free to grant him the relief that he seeks. It is not our place to do so on federal habeas review.

B. *Collateral Estoppel*

"Collateral estoppel, or issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment that issue cannot again be litigated between the same parties in any future lawsuit.' " *Santamaria v. Horsley*, 133 F.3d 1242, 1244-45 (9th Cir. 1998) (quoting *Ashe*, 397 U.S. at 443). In a criminal case, collateral estoppel precludes the state from bringing a charge when a previous "jury resolve[d], in a manner adverse to the government, an issue that the government would be required to prove in order to obtain a . . . conviction at the second trial." *United States v. Castillo-Basa*, 483 F.3d 890, 899 (9th Cir. 2007).

In evaluating collateral estoppel claims, we follow a three step process. First, we identify the issues in the two actions to determine whether they are sufficiently material and similar to justify invoking the doctrine; second, we examine the record in the prior case to determine whether the similar issue was litigated; third, we examine the record of the prior proceeding to determine whether the issue was necessarily decided in the first case. *Id.* A criminal defendant invoking collateral estoppel bears the burden of proving "that the issue

whose relitigation he seeks to foreclose was actually decided in his favor" in the prior case, *Dowling v. United States*, 493 U.S. 342, 350 (1990), and if this burden is not met, "preclusive effect must be denied," *United States v. Aguilar-Aranceta*, 957 F.2d 18, 23 (1st Cir. 1992).

**[19]** In this case, Wilson's acquittal on intentional murder charges necessarily demonstrates only that the jury was not convinced that Wilson personally and intentionally caused the victim's death; the verdict simply does not address whether the victim's death was caused by a person "in the course of and in furtherance of" a statutorily enumerated felony of which Wilson was a participant. Indeed, the jury could not have decided the issue of whether Wilson was guilty of a predicate felony in Wilson's favor because Wilson's convictions on first and second degree kidnapping charges in his 1993 trial have never been overturned, and the trial judge thus properly instructed the jury at his 2000 trial that they could "not question the facts of those charges." The issues necessarily decided by the jury in Wilson's 2000 trial are thus not sufficiently similar to those that would be at issue in a future felony murder prosecution to justify invoking the doctrine of collateral estoppel.

## C. *Termination of Jeopardy*

It is well-established that retrial following a hung jury does not constitute double jeopardy. *Richardson*, 468 U.S. at 324-26; *United States v. James*, 109 F.3d 597, 599-600 (9th Cir. 1997); *United States v. Seley*, 957 F.2d 717, 719-20 (9th Cir. 1992) ("As a general principle, retrials following hung juries do not cause double jeopardy because the failure of the jury to reach a verdict means that jeopardy has not yet terminated."); *United States v. Gooday*, 714 F.2d 80, 83 (9th Cir. 1983) ("When a trial ends as a result of the jury being unable to reach a unanimous verdict, the Double Jeopardy Clause of the Fifth Amendment does not bar retrial.").

Moreover, we have held that when greater and lesser included offenses are charged in one indictment and tried in the same case, termination of jeopardy on the greater charges by acquittal does not bar retrial on lesser included offenses on which the same jury did not reach a verdict. *See, e.g., Gooday*, 714 F.2d at 83 ("Gooday's acquittal on the indictment's first-degree murder count does not preclude retrial on the three lesser included offenses on which the jury was instructed."); *Forsberg v. United States*, 351 F.2d 242, 245, 248 (9th Cir. 1965).

**[20]** It is thus clear that neither Wilson's acquittal on the intentional murder charge nor the jury's failure to reach a verdict on counts one through three by itself terminated jeopardy with respect to the felony murder charges on which the State now seeks to retry him. Under Oregon law, these felony murder charges were necessarily included under the aggravated murder charges in counts one through three. Section 136.465 of the Oregon Revised Statutes states that "[i]n all cases, the defendant may be found guilty of any crime the commission of which is necessarily included in that with which the defendant is charged in the accusatory instrument," and the Oregon Court of Appeals has confirmed that felony murder is a lesser included offense to the crime of aggravated murder. *See State v. Bockorny*, 866 P.2d 1230, 1237 (Or. App. Ct. 1993). At Wilson's 2000 trial, the trial court properly instructed the jury on these lesser included charges and Wilson did not object to the jury's consideration of them. Thus, whether the disposition of counts one through three at Wilson's 2000 trial is characterized as a mistrial resulting from a hung jury (because of the jury's failure to reach a verdict on those specific charges) or deemed an acquittal (because of our interpretation of the jury's acquittal on the intentional murder charge in *Wilson I*), our precedent makes clear that jeopardy did not terminate with respect to the felony murder charges that were necessarily included under the aggravated murder charges in counts one through three and submitted to the jury in Wilson's 2000 trial.

In response to this line of cases, Wilson points out that the jury in his 2000 trial was prohibited from considering the felony murder charges by the acquittal-first instruction. He thus argues that this case presents a situation unlike that where a jury considers the charges at issue and deadlocks, and the trial court's declaration of a mistrial under the circumstances here bars his retrial.[4] We disagree.

In support of his argument, Wilson contends that the trial court's mistrial order was attributable to the prosecution's conduct, and hence not the result of manifest necessity. However, Wilson does not assert that he objected to the trial

---

[4]Wilson also asserts that the use of the acquittal-first instruction at his 2000 trial violated the Ex Post Facto Clause because it was unlawful under Oregon law at the time of the alleged crime. We do not understand Wilson to be arguing here that he is immunized from retrial merely because use of the acquittal-first instruction supposedly violated the Ex Post Facto Clause. Such a claim would fall outside the certificate of appealability we granted Wilson in this case and, in any event, the proper remedy would likely be retrial without the offending instruction. Rather, Wilson appears to argue that the unconstitutional character of the instruction as applied to him confirms his previous contention that the mistrial was attributable to wrongful conduct by the State, and thus not prompted by manifest necessity. As noted below, however, we conclude that (1) Wilson consented to the mistrial and the manifest necessity standard thus does not apply, and (2) even assuming that the manifest necessity standard did apply, it was met here. We thus do not see how Wilson's ex post facto argument is relevant to the double jeopardy inquiry.

In any event, the Supreme Court has explained that an ex post facto violation occurs when a "statute . . . punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed." *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925)). In *Carmell v. Texas*, 529 U.S. 513 (2000), the Court added that a law which "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender" also violates the Clause. *Id.* at 530, 534-35. The acquittal-first instruction does not even arguably fall into any of these categories.

court's mistrial order and nothing in the record reflects that such an objection was ever made. The Supreme Court has stated that the manifest necessity standard is limited to those situations "[w]here the trial is terminated over the objection of the defendant." *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982). Though the Supreme Court's decision in *Kennedy* dealt with a mistrial requested by the defendant, other cases have made clear that application of the manifest necessity standard is equally inappropriate where the trial court declares a mistrial with the defendant's express or implied consent. *See, e.g.*, *United States v. Dinitz*, 424 U.S. 600, 608 (1976) ("The distinction between mistrials declared by the court [s]ua sponte and mistrials granted at the defendant's request *or with his consent* is wholly consistent with the protections of the Double Jeopardy Clause." (emphasis added)); *United States v. Smith*, 621 F.2d 350, 351 (9th Cir. 1980) ("An implied consent to a mistrial, like an express consent, removes any double jeopardy bar to retrial."); *cf. Weston v. Kernan*, 50 F.3d 633, 637 (9th Cir. 1995) (holding that defendant did not consent to mistrial where defense counsel repeatedly objected prior to the mistrial order); *United States v. Bates*, 917 F.2d 388, 393 (9th Cir. 1990) (holding that no consent existed when defendant had no opportunity to object prior to the mistrial order).

In addition, Oregon law provides that "[i]f the jury is unable to reach a decision on the original charge, the state and defendant may stipulate that the jury may consider any lesser included offense." OR. REV. STAT. § 136.460(4). Wilson does not assert, and nothing in the record indicates, that he asked the trial court or the prosecution to allow the jury to consider the lesser included felony murder charges prior to the trial court's declaration of a mistrial. When this point is coupled with his failure to object, it is clear that Wilson consented to the mistrial.

**[21]** *Kennedy* makes clear that retrial after a mistrial declared with the defendant's consent violates the Double Jeopardy Clause only if that consent was procured by pro-

secutorial conduct that was "intended to 'goad' the defendant into moving for a mistrial." *Kennedy*, 456 U.S. at 676. There is no evidence that the prosecution supported the acquittal-first instruction for this reason. At most, Wilson suggests that the prosecution's advocacy of the acquittal-first instruction may have been a strategic decision. Even if this were true, however, strategy is not misconduct, let alone misconduct purposefully aimed at depriving Wilson of his double jeopardy rights. Indeed, the trial court's use of the acquittal-first instruction was not even attributable to the prosecution's conduct, because Oregon law affirmatively *required* this instruction. *See* OR. REV. STAT. § 136.460(2).[5] The trial court's declaration of a mistrial on these charges thus does not bar the State from retrying Wilson for felony murder.

## IV.

The judgment of the district court is affirmed.

AFFIRMED.

---

[5] We also note that it is fundamentally illogical to construe the prosecution's advocacy of the acquittal-first instruction as motivated by strategic considerations. Wilson suggests that the state wished to avoid having the jury consider the felony murder charges under counts one through three, but this contention does not make sense. As the State points out, the jury's failure to reach a verdict on the aggravated murder charges in counts one through three makes it logically impossible that it could have acquitted Wilson of the lesser-included felony murder charges.

This point also illustrates that, even if Wilson had not consented to the trial court's declaration of a mistrial, manifest necessity plainly supported the trial court's action. The jury's failure to acquit Wilson on the aggravated murder charges in counts one through three, necessarily indicates that it could not have acquitted him of the lesser-included felony murder charges either. The jury's consideration of these charges could only have resulted in either deadlock or conviction. It would be ironic to conclude that the Double Jeopardy Clause embodies a defendant's right to have a jury *convict* him of certain charges.